Boylan v. Deinzer.

GEORGE W. BOYLAN and THOMAS F. BOYLAN, by their next friend,

*v.*

GEORGE DEINZER and ANN BOYLAN.

1. A marriage between a man and a woman related within the degrees prohibited by law is not void, but voidable, and until dissolved by a court of competent jurisdiction must, in all collateral proceedings, be treated as valid.

2. A man who intrudes upon the lands of an infant and takes their profits will be considered in equity the trustee of the infant, and required to account to the infant.

3. But a person who enters innocently under the intruder, as his tenant, and pays rent to the intruder, without notice of the infant's title, is not answerable to the infant.

On final hearing on bill and answer by the defendant, Deinzer, and proofs taken before a master.

*Mr. Alan H. Strong*, for the complainants.

*Mr. Charles H. Runyon* and *Mr. George C. Ludlow*, for the defendant, Deinzer.

Boylan *v.* Deinzer.

VAN FLEET, V. C.

The principal question presented for decision in this case is, whether the complainants are entitled to recover, as against the defendant, George Deinzer, the rental value of a house and lot, situate in the city of New Brunswick, from May 1st, 1883, to August 1st, 1885.

The complainants are infants, and they rest their right to recover in equity on that fact, and also on the further fact that Deinzer intruded on their lands and took the profits of them for the period above named. They claim that, by force of these facts, they have a right to regard him as their guardian or trustee, and to compel him to account in equity for whatever he has received from their lands. The lands from which the rents in question were derived were, on the 24th day of April, 1880, conveyed by William Boylan, the father of the complainants, to John Helm. Helm on the same day conveyed them to Ann Boylan. Ann was then the wife of William Boylan, and she is the mother of the complainant Thomas, and the step-mother of the complainant George. The deed from Helm to Ann is without words of inheritance in the granting clause. Its *habendum*, however, reads as follows:

NOTE.—That a marriage between parties related within the prohibited degrees of consanguinity or affinity, is not void, but merely voidable, and cannot be attacked collaterally, has been held in the following instances: Where, after a marriage between a man and his niece, a nephew of decedent claimed a distributive share of his estate to the exclusion of the children of such marriage, *Harrison* v. *State, 22 Md. 468;* where the title of the purchaser of such widow's dower was assailed, *Adkins* v. *Holmes, 2 Ind. 197; Bonham* v. *Badgley, 7 Ill. 622;* where the surviving husband's right to administer on his wife's estate was disputed, *Elliott* v. *Gurr,,2 Phillim. 16;* and the surviving widow's right to administer, *Parker's Appeal, 44 Pa. St. 309;* see *Myatt* v. *Myatt, 44 Ill. 473;* where the husband brought an action on a promissory note given to his wife, who was his mother's sister, *Sutton* v. *Warren, 10 Metc. 451;* where the wife, who was her husband's niece, claimed a distributive share of his estate after his decease, *Bowers* v. *Bowers, 10 Rich. Eq. 551;* where a grandson claimed lands as heir of his grandmother against her husband, who was her nephew by consanguinity, *Stevenson* v. *Gray, 17 B. Mon. 193, 215.*

An agreement between an aunt and her nephew (the plaintiff being half-sister of defendant's mother) to be married in the State of New York, is void, if made in Alabama, where such marriages are prohibited, and will not sus-

Boylan v. Deinzer.

"To have and to hold all and singular the above-described land and premises, with the appurtenances, unto the said party of the second part, for and during the term of her natural life, or so long as she remains the widow of the said William Boylan, and if she shall marry again, then at such time as she shall marry after the decease of the said William Boylan, the property hereinbefore described to descend to and become the property of Thomas F. Boylan and George W. Boylan, their heirs and assigns, forever ; and in case of her decease without having married, the said property to descend to and become the property of the said Thomas F. Boylan and George W. Boylan, their heirs and assigns, forever."

William Boylan died on the 1st day of September, 1881. His widow, Ann, at the time of his death, was in possession of the house and lot conveyed to her by Helm, and continued in possession of them up to the 1st of May, 1883. She contracted a second marriage in December, 1882, by marrying her step-grandson, the grandson of William Boylan, her first husband. Just prior to the 1st of May, 1883, Ann let the house and lot, by written lease, to the defendant, Deinzer, for a term of two years, commencing on the 1st of May, 1883, at a rent of $120 a year, and she subsequently granted a further term of one year to Deinzer for a like yearly rent. Deinzer occupied the demised premises up to August 1st, 1885, when he surrendered them to the complainants on demand being made on behalf of complainants for

tain an action in New York, *Campbell* v. *Crampton, 8 Abb. N. C. 363, 18 Blatchf. 150, 2 Fed. Rep. 417.*

If a man marry his aunt, and, while she is alive, marry again, it is bigamy, *State* v. *Barefoot, 2 Rich. 209;* see *Butler* v. *Gastrill, Gilb. Ch. 156; Burgess* v. *Burgess, 1 Hagg. 384.*

In England, a pauper was held not to have acquired a settlement through her husband, she being the daughter of an illegitimate half-sister of his deceased wife, *Regina* v. *Brighton, 1 B. & S. 447;* see *Hiram* v. *Pierce, 45 Me. 367; Unity* v. *Belgrade, 76 Me. 419; Manchester* v. *Springfield, 15 Vt. 385.*

Where both parties were English, an antenuptial settlement made upon the wife (who was the daughter of the settlor's first wife's sister), for her benefit for life, and then for that of their children, was held void, although the marriage was valid by the law of Switzerland, where the ceremony was performed, and there were two children of such marriage surviving, *Chapman* v. *Bradley, 33 Beav. 61, 4 DeG., J. & S. 71;* see *Schloss* v. *Stiebel, 6 Sim. 1; Buissière's Succession (La.), 5 South. Rep. 663.*

See, further, *6 Bacon's Abr. (Bouv. ed.) 459, 460; Hodgins* v. *McNeil, 9 Grant Ch. 305; Walter's Appeal, 70 Pa. St. 392; Kelly* v. *Scott, 5 Gratt. 479; 2 Cent. L. J. 340; 27 Sol. J. 293.*—REP.

their possession. The premises the day previous, July 31st, 1885, had been conveyed to the complainants by John Helm. This deed passed, by express words, all the rents and profits which Helm had been or could be entitled to since the remarriage of Ann Boylan. Deinzer had paid the whole of the rent reserved by both leases to Ann Boylan prior to his surrender, and before he knew that the complainants had any right to or interest in the demised premises. The proofs show that while Deinzer occupied the premises he was ignorant of the complainants' right to them. His conduct in paying the whole of the rent to Mrs. Boylan, long in advance of the times when by the terms of the leases it would have fallen due, furnishes evidence quite conclusive in its character that he had no doubt or suspicion respecting the validity of her title. In renting the premises he seems to have been actuated by benevolent rather than fraudulent or avaricious motives. His object seems to have been to assist a poor and needy widow to get means to support herself and her child. At the time the leases were made to Deinzer, Mrs. Boylan was not living with her second husband. They separated soon after marriage. They were married by a priest of the Roman Catholic Church. As soon as the priest learned that the wife was the step-grandmother of her husband, and that the husband was the step-grandson of his wife, he went to them and told them their marriage was void by the law of the church, and that they must separate, and they did so at once, and have not since cohabited or lived together. The rents paid by Deinzer to Mrs. Boylan were, with the exception of an inconsiderable part, applied by her to the support of herself and the complainant Thomas. The other part was expended by her for the benefit of the complainant George.

On these facts the complainants ask a decree compelling the defendants to account for and pay over the rents of the premises in question from May 1st, 1883, to August 1st, 1885. No account prior to May 1st, 1883, is asked, although Mrs. Boylan remarried more than a year prior to that date. This suit is aimed mainly, if not exclusively, at Deinzer. Mrs. Boylan is without means, and probably always will be. Deinzer alone has

Boylan v. Deinzer.

answered, and the only question in dispute is whether the complainants are entitled, as against him, to the relief they ask.

The first defence which the defendant, Deinzer, makes to the complainants' case is, that the marriage of Ann Boylan with her step-grandson was absolutely void. If this is so, she has not, as a matter of law, remarried since the death of her first husband, but is still his widow and a single woman, and she still continues to hold, perfect and complete, the estate granted to her by John Helm. The statute concerning marriages declares, that no man and woman shall intermarry who are related to each other within the degrees thereinafter specified, and then, in specifying the degrees, says, that no man shall marry his grandfather's wife, and that no woman shall marry her husband's daughter's son, or her husband's son's son. *Rev. p. 631 § 1.* But this statute goes no further. It does not declare that if a man and woman, who are related within the prohibited degrees, marry, their marriage shall be void. On the contrary, the statute concerning divorces declares, that a divorce from the bond of matrimony may be decreed in case the parties are related within the degrees prohibited by law, but that the sentence or decree in such a case shall not render the issue of such marriage illegitimate. *Rev. p. 315 § 3.* But where either of the parties to a marriage shall have a former husband or wife living, at the time of their marriage, their marriage shall be invalid from the beginning and absolutely void, and the issue thereof shall be deemed to be illegitimate. *Rev. p. 315 § 2.* When these three provisions are considered together, it is made entirely plain, as I think, that the law-making power meant that a marriage between persons within the prohibited degrees should not be void, but merely voidable, and that until such a marriage is dissolved by a court of competent jurisdiction, in a direct proceeding instituted for that purpose, it shall, in all collateral proceedings, be considered and adjudged to be valid. This is the well-established doctrine of the common law. *1 Bish. Mar. & D. §§ 105, 110, 112.* From this view it necessarily follows, that the marriage contracted by Ann Boylan, in December, 1882, put an end to her estate in the lands in question, and for present pur-

poses, I shall assume, that immediately on the termination of her estate, the complainants became entitled in equity to the lands from which the rents in question were derived.

The principle of equity jurisprudence, upon which the right of the complainants to relief against Deinzer is placed, is stated by Judge Story in that part of his Commentaries on Equity Jurisprudence in which he defines in what instances, and under what circumstances, a court of equity may properly entertain an action for *mesne* profits, as follows :

"Thus, for instance, if a man intrudes upon an infant's lands and takes the profits, he is compellable to account for them, and will be treated as a guardian or trustee for the infant. And this is but following out the rule of law in like case, for so greatly does the law favor infants, that if a stranger enters into and occupies an infant's lands, he is compellable at law to render an account of the rents and profits, and will be chargeable as guardian or bailiff." *1 Story Eq. Jur. § 571.*

The same distinguished author, in a subsequent part of his commentaries, says :

"The court of chancery will exercise a vigilant care over guardians in the management of the property of infants so far as to reach other persons than those who are guardians strictly appointed. For if a man intrudes upon the estate of an infant and take the profits thereof, he will be treated as a guardian, and held responsible therefor to the infant in a suit in equity." *2 Story Eq. Jur. § 1356.*

The rule of law alluded to by Judge Story is of great antiquity. Littleton states it in these words :

"And if any other man, who is not the next friend, occupies the lands or tenements of the heir as guardian in *socage,* he shall be compelled to yield an account to the heir as well as if he had been next friend ; for it is no plea for him in the writ of account to say that he is not next friend &c., but he shall answer whether he hath occupied the lands or tenements as guardian in *socage* or no. But query : if after the heir hath accomplished the age of fourteen years, and the guardian in *socage* continually occupieth the land until the heir comes to the full age of twenty-one years, if the heir at his full age shall have an action of account against the guardian from the time that he occupied after the said fourteen years, as guardian in *socage,* or against him as his bailiff?" *Co. Litt. §§ 89, 124.*

Now, although the court of chancery of England has repeatedly enforced the principle on which the complainants rely for relief, I have found no instance in which so harsh and unjust an application of it has been made as must be made in this case if relief is awarded against Deinzer. The original design of the principle is apparent. It was intended to put it in the power of an infant to obtain redress against any person who should intrude upon his lands, that is, take wrongful possession of them, with intent to take the profits of the land for his own use, and deprive the infant of them. An intrusion is defined by Blackstone to be an entry by a stranger on lands after a particular estate of freehold in them is determined and before entry by the remainderman or revisioner. *3 Bl. Com. 169.* But it was not intended by this principle, as I conceive, to raise a liability in favor of an infant owner against a person who should innocently enter on an infant's land, under an intruder, as his tenant, and who has paid rent to the intruder in good faith. Neither the spirit of the rule, nor its words, give it so wide a scope. It is aimed solely at the intruder and makes him liable. It is directed against the person who intrudes on the land and takes the profit, but it imposes no liability on those who innocently enter under the intruder, and who, without notice that his possession is wrongful, pay rent to him. And this I understand to be the construction which the rule has received in the adjudged cases.

Among the earliest cases decided according to this principle is *Allen* v. *Sayer, 2 Vern. 368.* The report cited is Raithby's edition of Vernon, published in London, 1828. In this case the lands in question were devised to trustees until the testator's debts were paid, and then they were given to the plaintiff and his heirs. At the time the devise to the plaintiff took effect, he was an infant. During his infancy, Peter Sayer, the father of some of the defendants, entered on the lands and levied a fine, and non-claim passed. Sayer subsequently conveyed the lands to some of the defendants and then died. When the plaintiff attained his majority, he brought ejectment for the lands, but was non-suited in consequence of the fine and non-claim. He then filed a bill in equity to recover the lands, and also for an

account of the profits. Lord Somers, in deciding the case, held that, although the fine and non-claim constituted a good bar at law, they did not bar a recovery in equity, and he accordingly decreed possession to the plaintiff, and also that he was entitled to an account of the profits so far as the defendants had assets of Peter Sayer, but no further. The plaintiff's remedy, it will be observed, was limited strictly to the liability growing out of the intrusion committed by the defendants' ancestor, and although they attempted to defend a title which had no foundation but a trespass, yet they were not held personally answerable for the wrong they did in occupying the plaintiff's land, but the wrong in respect to which the plaintiff was given redress was regarded as the wrong of the defendants' ancestor, and the defendants were simply held liable to the extent that they had derived assets from their ancestor. In all the subsequent cases involving the enforcement of this principle, which I have examined, and in which the defendant has been held liable, his liability has been put distinctly on the ground that he either knew, or should have known, from papers in his possession, that he was in the possession of lands belonging to an infant, and for which he should pay rent to the infant. Thus, in *Bennet* v. *Whitehead, 2 P. Wms. 643,* Lord King said, the defendant must account, as it appeared that he had the deed and counterpart of the lease in his possession which made out the plaintiff's title. And in *Dormer* v. *Fortescue, 3 Atk. 124, 130,* Lord Hardwicke said, that the general rule of the court was to decree an account of rents and profits from the time the plaintiff's title accrued, "unless upon special circumstances, and then they will restrain it to the time of bringing the bill, as where the defendant had no notice of the plaintiff's title, nor had the deeds and writings in his custody in which the plaintiff's title appeared, or where the title of the plaintiff appeared by deeds in a stranger's custody." To the same effect are the remarks of Lord Langdale, master of the rolls, in *Blomfield* v. *Eyre, 8 Beav. 250, 258.* He said: "The authorities relative to cases of this kind, in which the court will exercise jurisdiction, are not very distinct,

perhaps not altogether consistent; but it is to be observed that in this case, the defendant, aware of the facts, took and held possession during the infancy of the plaintiff; dealt with the property, or at least so much thereof as purported to be conveyed to him, as his own; took possession of the documents of title relating to the whole, and delivered them over to his own mortgagee." The liability of the defendant in *Nanney* v. *Williams, 22 Beav. 452,* and also in *Hicks* v. *Sallitt, 3 De G., M. & G. 782, 812,* was put upon the same ground.

The rule laid down by Lord Hardwicke would seem to hold, that even an intruder is not liable for *mesne* profits in case he enters innocently, under an honest belief that he has good right to do so, until he receives notice of the infant's title. Whether this is the true interpretation of the rule or not, it is not necessary now to decide, for, viewing the rule in its most rigorous aspect, I regard it as entirely clear, that this case, so far as it affects Deinzer, does not come within either its language or its spirit. Deinzer did not intrude upon the complainants' lands in the sense in which those words are used in the rule, nor did he take the profits of their lands. He entered as the tenant of the person who, for over three years, had had the continued and un-interrupted possession of them, and who stood to the complainants *in loco parentis,* under an agreement to pay, and he did pay, rent to his lessor, believing that she was entitled to the premises. Her previous possession justified his belief. Under such circumstances Mrs. Boylan must be held to have been the sole intruder. She alone derived any profit or advantage from the intrusion. If she had been of sufficient pecuniary ability to respond to the claim of the complainants, it is highly improbable that any claim would have been asserted against Deinzer—it may be that in that event no claim would have been made against anybody—but be that as it may, my opinion is clear and decided, that on the facts of this case the complainants have no right to relief against Deinzer. Their bill must, therefore, as against him, be dismissed, with costs.

If it is desired, a decree directing Mrs. Boylan to account to

the complainants will be made. The decree will, however, direct that all just allowances shall be made to her for such parts of the rents received by her as she has applied to the support and maintenance of the complainants.