58 N.J. Super. 67 (1959)
155 A.2d 273
IN THE MATTER OF THE ESTATE OF JAMES MOSES, DECEASED,
LATE OF THE BOROUGH OF SPRING LAKE, MONMOUTH COUNTY, NEW JERSEY, LAURA M. BRINTON AND ETHEL R. MERRILL, INDIVIDUALLY AND AS TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF JAMES MOSES, DECEASED, PLAINTIFFS-APPELLANTS, AND LYDIA MERRILL FRITZ, MARY WHITE WATKINS, ELEANOR CHAMBERLIN, EDWARD M. CHAMBERLIN AND LAURA CHAMBERLIN CAMPBELL, DEFENDANTS-APPELLANTS, AND JOAN ISELIN HYDE, DEFENDANT-APPELLANT,
v.
PETER MERRILL WATKINS, DEFENDANT-RESPONDENT, AND ERIC WATKINS ET ALS., INFANTS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1959.
Decided November 9, 1959.
*69 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Ralph E. Lum, Jr., argued the cause for plaintiffs-appellants (Messrs. Lum, Fairlie & Foster, attorneys).
Mr. Arnold Tulp argued the cause for defendants-appellants and defendant-appellant.
Mr. Joseph R. Megill argued the cause pro se as representative for unborn issue and guardian ad litem for defendants-respondents Eric Watkins et als.
*70 The opinion of the court was delivered by SULLIVAN, J.A.D.
This is a will construction case. It involves the question of whether a testamentary trust may be partially terminated at this time and, if so, to whom should the distribution of the terminated trust corpus be made.
James Moses died a resident of Spring Lake, New Jersey, on October 8, 1920, leaving a will dated May 15, 1918, which has been admitted to probate by the Surrogate of Monmouth County. Decedent was survived by a widow and three daughters, Laura, Ethel and Vera. He was also survived by five grandchildren, two of whom were children of Ethel, the other three being children of Vera. Four of these grandchildren were born prior to the execution of the will.
The will, by paragraph "Third," established a trust of the residue of the estate. Subparagraph 1 of paragraph "Third" directs the trustees to pay an annuity to decedent's widow. She died on September 20, 1935. Subparagraphs 2 and 3 of paragraph "Third," and paragraphs "Fourth" and "Eighth," the provisions of the will pertinent to this inquiry, are as follows:
"2. To divide the rest, residue and remainder of said income into as many equal parts as I shall leave daughters surviving me and daughters who may have died leaving issue surviving me, and to pay over quarterly one of said parts to each of my daughters, and to the issue of a deceased daughter if any such there should be, such issue to take in equal shares the part the mother would have been entitled to if living. This trust shall continue subject to the provisions hereafter contained during the lifetime of my daughter LAURA McD. MOSES.
3. This trust shall terminate at once on the consent in writing of my three daughters, or in case of the death of one of them, on the consent in writing of the other two, and on the filing of such consent in the office of any Surrogate or other probate Court where this Will may be probated.
FOURTH: On the termination of the trust hereinbefore created, whether under Subdivision `2' or under Subdivision `3' of the preceding Paragraph of this Will, I give the principal of said trust fund as follows, viz:
*71 One equal part thereof, I give to each of my then living daughters, and one equal part in equal shares to the descendants of any deceased daughter.

* * * * * * * *
EIGHTH: I have put the bulk of my estate in the hands of trustees because I have felt it could be managed more efficiently and more economically than if distributed at once among my daughters; at the same time I have felt that circumstances might arise which would render a long continuance of the trust undesirable. I hope, however, that my daughters will not avail themselves of the power given them to terminate the trust except they feel such circumstances have arisen."
The oldest daughter, Laura McD. Moses (now Laura M. Brinton), upon whose death the trust ends unless it is sooner terminated, is still alive and is one of the trustees of the trust. Ethel R. Merrill, the second daughter, is still alive and is the other trustee. Vera McF. Chamberlin, the other daughter, died April 3, 1952 survived by three children, Eleanor, Edward and Laura, all of whom are living. Edward Chamberlin has one child. Laura Chamberlin (now Laura Chamberlin Campbell) has four children.
During the widow's lifetime the balance of trust income, and after the widow's death in 1935 the entire trust income, was divided equally among decedent's three daughters. After Vera McF. Chamberlin, one of the daughters, died in 1952 her share of the trust income was paid to her three children. Her grandchildren have not received any distribution of trust income.
By instrument dated September 22, 1958 and filed in the office of the Surrogate of Monmouth County, Laura M. Brinton and Ethel R. Merrill, the two surviving daughters of decedent, consented in writing to a partial termination of the trust to the extent of $180,000 of corpus.
Thereafter the trustees filed their ninth intermediate accounting in the County Court, Probate Division, and as part of said proceedings submitted the following matters to the court for a ruling. Since Vera Chamberlin's death in 1952, have the trustees acted properly in distributing one-third of the trust income among Mrs. Chamberlin's *72 children to the exclusion of grandchildren? The trial court ruled that the trustees had acted properly since the meaning of subparagraph 2 of paragraph "Third" of the will was that distribution of income to the issue of a deceased daughter was to be per stirpes and not per capita. No appeal has been taken from this ruling.
The second matter presented to the court was the legal efficacy of the instrument of September 22, 1958. As to this the court determined that subparagraph 3 of paragraph "Third" vested in the daughters an absolute right to terminate the trust in whole or in part at any time. He therefore ruled that the instrument of September 22, 1958 was an effective termination of the trust to the extent indicated therein. This ruling has been appealed by the guardian ad litem for all infant defendants and unborn parties in interest, and is one of the matters presented on this appeal.
The third matter submitted to the trial judge was the method of distribution of trust corpus on termination of the trust and, in particular, how the share of the deceased daughter was to be distributed. This involved the construction of the language of paragraph "Fourth" of the will as follows:
"* * * and one equal part in equal shares to the descendants of any deceased daughter."
The trial court ruled that the word "descendants" meant progeny to the remotest degree and that therefore all lineal descendants of Vera Chamberlin were to "share and share alike, per capita," in the distribution. The result is that Vera Chamberlin's grandchildren participate equally with their lineal parent on a per capita basis, in the distribution of trust corpus. All parties in interest who are sui juris have joined in an appeal of this ruling.
Have the two daughters of decedent the absolute discretion under subparagraph 3 of paragraph "Third" of the will to terminate the trust at any time? The guardian *73 ad litem argues that paragraph "Eighth" of the will limits the daughters' power to terminate the trust to a situation where continuance of the trust would be undesirable, and that unless the daughters can show such circumstances, the power may not be exercised. The point is not well taken. The decedent's intent is clearly expressed and easily understood. He vests in his daughters the power to terminate the trust at any time and thereby receive and enjoy the trust assets. Paragraph "Eighth" is nothing more than a paternal caution to the daughters to use this power prudently.
Since they have the power to terminate the entire trust, no reason appears why a partial termination may not be effected in the absence of some prohibition in the trust itself. It is generally held that the power to revoke a trust includes the power of partial revocation unless the trust instrument provides otherwise. Scott, Trusts (2d ed. 1956), § 330.11; Restatement, Trusts, 2d, § 330(n). The instrument of September 22, 1958 is an effective termination of the trust to the extent therein indicated.
The final point to be considered is whether or not, on termination of the trust, the distribution of corpus "to the descendants" of Vera Chamberlin, as provided in paragraph "Fourth" of the will, is to be on a per stirpes or a per capita basis.
Prior to 1952 it was settled law that the unqualified word "issue" in a will signified progeny to the remotest degree and carried with it a rebuttable presumption that the distribution of a testamentary gift should be per capita. Plainfield Trust Co. v. Hagedorn, 28 N.J. 483 (1958). The term "issue" is generally held to be synonymous with the term "descendants." Sanford v. Kaercher, 126 N.J. Eq. 391 (Ch. 1939); In re Fisler, 133 N.J. Eq. 421 (E. & A. 1942); Walsh v. Hulse, 23 N.J. Super. 573 (Ch. Div. 1952). This presumptive per capita construction was not without its critics, and in 1952 the Legislature enacted N.J.S. 3A:3A-1 and 2 (L. 1952, c. 221) which abolished the rule. The change, however, did not affect *74 trusts created prior thereto or wills of persons who died prior to the legislative action, so that the present inquiry is limited to the proper application of the original rule.
The basis for the presumption is the proposition that the word "issue" is an exact legal term meaning progeny to the remotest degree, and it would therefore be presumed that a decedent used it in its primary sense unless a contrary intention appeared. The question is one of intent and the rule is but a means of ascertaining such intent. In every case the inquiry is what did the decedent mean or intend by his use of the particular expression. The term "issue" or "descendants" will not be construed in its precise sense if it appears that the decedent did not so use it. Pierson v. Jones, 108 N.J. Eq. 453 (Ch. 1931) affirmed on opinion below 111 N.J. Eq. 357 (E. & A. 1932); Skinner v. Boyd, 98 N.J. Eq. 55 (Ch. 1925); Dennis v. Dennis, 86 N.J. Eq. 423 (E. & A. 1916).
Consideration of the present will, and the circumstances existing at the time of its execution, indicates that decedent used the term "descendants" in paragraph "Fourth" of his will in a per stirpes sense. The instrument is not an exact and tightly drawn document as was the case in Hagedorn, supra. In many ways it is informal in its phraseology. The trust thereunder is capable of being terminated at any time and, in any event, would not extend beyond the lifetime of the oldest daughter. Certainly this did not contemplate that generations unborn at the time the will was executed were ultimately to take the trust corpus. Four of decedent's five grandchildren were in esse prior to his death and he certainly would be presumed to favor them to progeny he never knew. Perhaps the clearest indication of a per stirpes intent is that part of paragraph "Fourth" which provides that on termination of the trust the corpus is to go to his daughters in equal shares. Only if a daughter is deceased do her "descendants" share in the distribution. This provision was written into the will by decedent at a time when two of his three daughters had children of their *75 own. Nevertheless, decedent excluded grandchildren unless their ancestor was dead, a clear per stirpes intent.
The fact that the will uses different phraseology in disposing of the trust income merely points up the decedent's use of a term in other than its exact meaning. In subparagraph 2 of paragraph "Third" the decedent left trust income to "issue" of a deceased daughter. The court below ruled that decedent intended a per stirpes distribution and that "issue" actually meant "children."
Use of the phrase "in equal shares" after the word "descendants" is not indicative of a per capita intent. All it means is that members of the same class take in equal shares. The same expression was used in disposing of trust income to "issue" of a deceased daughter. No one questions a per stirpes intent on distribution of income.
The sense of paragraph "Fourth" is that decedent intended the term "descendants" to have a per stirpes meaning. The judgment in the County Court is to be modified to provide that on termination of the trust in whole or in part, distribution of the share of trust corpus "to the descendants of any deceased daughter" shall be per stirpes and not per capita. In all other respects, the judgment is affirmed.