141 N.J. Super. 476 (1976)
358 A.2d 826
SCOTT WHATELEY, PLAINTIFF,
v.
LEONIA BOARD OF EDUCATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 14, 1976.
*477 Mr. James S. Webb, Jr., for plaintiff (Mr. Paul J. Giblin, attorney).
Mr. Irving C. Evers for defendant (Messrs. Parisi, Evers & Greenfield, attorneys).
GELMAN, J.S.C.
The issue presented in this case is the validity of a regulation of defendant Leonia Board of Education which prohibits it from employing a "second member of an immediate family" on a full-time basis. The plaintiff asserts that the board's regulation denies to him the opportunity for employment because of his "ancestry." The issue is novel to this jurisdiction and, so far as can be determined, *478 has not been encountered elsewhere in the United States.
Plaintiff has been temporarily employed on an hourly basis by the board as a school custodian and his father George Whateley is employed by the board as Supervisor of Buildings and Grounds. According to the complaint, plaintiff has been performing the duties of another custodian who recently retired, and he was informed by the board's secretary that he was ineligible for permanent employment because of the regulation referred to above. Having been informed that the board intended to hire someone else to fill the vacancy on its custodial staff, plaintiff instituted this action by order to show cause seeking a declaration that the regulation is invalid and directing the board to appoint him to the position of school custodian. The Board has cross-moved to dismiss the complaint.
Plaintiff contends that the Board's regulation violates the N.J. Const. (1947) Art. I, par. 5, and the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. Art. I, par. 5 prohibits the denial of any civil right of any person "because of religious principles, race, color, ancestry or national origin." N.J.S.A. 10:5-4 provides, in pertinent part, that "[a]ll persons shall have the opportunity to obtain employment * * * without discrimination because of race, creed, color, national origin, ancestry, age, marital status or sex * * *."[1]
The argument rests on the proposition that "ancestry" as used in the Constitution and the statute has reference to "genealogical succession" or "line of descent," *479 since that is the standard dictionary definition of the word. See, e.g., Webster's New International Dictionary (3 ed. 1971 unabridged); cf. Black's Law Dictionary (4 ed. 1951)  "Ancestor. One from whom a person lineally descended or may be descended; a progenitor". But dictionary definitions are not necessary a reliable guide to the meaning of words of a Constitution or statutes of this breadth and significance. The question which must be answered is what was the intent and the objective of those who framed the Constitution and enacted the law. Schuchter v. Div. on Civil Rights, 117 N.J. Super. 405, 407 (App. Div. 1971). All too frequently words are imprecise instruments to communicate meaning, and it is part of the interpretative function of the courts to seek out the underlying intent and the spirit of the legislation, which must prevail over the literal sense of the terms used. Dept. of Health v. Sol Schnoll Dressed Poultry Co., 102 N.J. Super. 172, 175. (App. Div. 1968).
Civil rights legislation has been on the books in this country for more than a century, and the past four decades have witnessed unprecedented legislative activity in the Congress and throughout the country to vindicate the right to equal and nondiscriminatory treatment in many areas of social and economic life such as education, housing, public accommodations and employment. The legislative treatment has essentially two aspects: defining the areas of activity as to which discriminatory practices will not be tolerated (e.g., housing, public accommodations, etc.), and delineating generic characteristics which may not be used to deny equal treatment (e.g., race, religion, etc.). As to the latter, the legislative effort has focused upon general, rather than specific, classifications of societal groups who historically have been the objects of discrimination.
The New Jersey Law Against Discrimination incorporated "ancestry" as one such classification when our civil rights laws were broadened in 1945 (L. 1945, cc. 168 to 174), and two years later the framers of the Constitution inserted *480 it in Art. I, par. 5. The obvious intent in doing so was not the prevention of discrimination based upon specific family relationships between individuals such as here, but to prohibit discrimination because of racial, religious, ethnic or national ancestry shared by numerically significant segments of the population. This conclusion is buttressed by application of the doctrine of noscitur a sociis, for the coupling of words in a statute denotes an intention that they should be understood in the same general sense. Martell v. Lane, 22 N.J. 110, 117 (1956); Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494, 502 (1950); Dept. of Health v. Sol Schnoll Dressed Poultry Co., 102 N.J. Super. 172, 177 (App. Div. 1968); 2A Sutherland, Statutory Construction (4 ed. 1973) § 47.16. The words associated with "ancestry" in both the Constitution and the statute  "race, creed, color", etc.  attribute to it a meaning beyond that derived from the laws of descent and distribution.
The board's regulation reflects a policy which may be debatable but certainly is not unreasonable. The spectre as well as the fact of nepotism in public employment is not only an irritant to taxpayers but can create conflicts of interest and adversely affect the morale of other employees in the school system. See Keckeisen v. Independent School District 612, 509 F.2d 1062, 1066 (8 Cir.1975), cert. den. 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975). This is particularly the case where, as here, plaintiff's father would be his immediate superior and responsible for his supervision and the evaluation of his job performance.
Insofar as the complaint seeks a declaration that the board's regulation is invalid, it is dismissed and an appropriate order is to be submitted.
NOTES
[1] The word "ancestry" appears in the same context in all of our anti-discrimination statutes. See N.J.S.A. 10:1-3, 8, 10; N.J.S.A. 10:2-1; N.J.S.A. 10:5-3, 8(j), 9.1, 10, 12. Ten other states include "ancestry" in their anti-discrimination laws. See 3 Sutherland, Statutory Construction § 72.03 (4th ed. 1974). See La Pierre v. Massachusetts Com'n Against Discrim., 354 Mass. 165, 236 N.E.2d 192 (Sup. Jud. Ct. 1968) construing the phrase "national ancestry."