225 N.J. Super. 267 (1988)
542 A.2d 52
IN THE MATTER OF BABY M, A PSEUDONYM FOR AN ACTUAL PERSON.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided April 6, 1988.
*269 Gary N. Skoloff and Francis W. Donahue for plaintiffs (Skoloff & Wolfe, attorneys).
Harold J. Cassidy and Joel Siegal for defendants (Cassidy, Foss & SanFilipo, attorneys).
SWEEN, J.S.C.
Prior court proceedings have adjudicated the parties' rights in this case. Melissa will be in the custody of William Stern and have visitation with Mary Beth Whitehead Gould. The sole purpose of this proceeding is to define the visitation, taking into consideration the particular circumstances of Melissa, her parents, stepparents, and extended families. The court finds that Melissa's best interests will be served by unsupervised, uninterrupted, liberal visitation with her mother.

I.
The initial supervised visitation order was entered by the court after Mary Beth Whitehead Gould had fled New Jersey with her baby and threatened the baby's life. Family and financial crises engulfed her marriage, and she was under the stress of having lost custody of her newborn baby. Since that time her marital problems have been resolved through divorce; she has attained family stability with her new husband, and has come to the realization that she will never have custody of Melissa, who will be raised by her father and stepmother. The court finds, and the parties and their expert witnesses agree, there is no present evidence of any risk that Mary Beth Whitehead Gould will again flee with Melissa or cause her any physical harm.

II.
Mary Beth Whitehead Gould had custody of Melissa and nurtured her for four months after her birth. Thereafter, she has seen Melissa on a regular, periodic basis until the present *270 time. They have a warm and loving relationship, interact well and appropriately, and stay engaged with each other over two-hour periods under restrictive and confining circumstances.
Melissa has no problems separating from her father or stepmother when brought to visitation, no separation anxiety during the two hours she is left with her mother, and no adverse reactions to visitation after she has returned to her father and stepmother. The court finds no credible evidence or expert opinion that Melissa will suffer any psychological or emotional harm by continued and expanded visitation with her mother.
William and Elizabeth Stern offered no evidence to support their fears that Melissa's continued relationship with her mother will somehow adversely affect her development or jeopardize their parent-child relationship. Their expert witness offered no clinical studies or personal observations of children under his care in similar circumstances to support his opinion that there should be no visitation until Melissa expresses a desire to meet her mother or until she is 12 years old. Neither the Sterns nor their expert seemed able to comprehend this is no longer a termination of parental rights or adoption case and it no longer matters how Melissa was legally conceived. She and her mother have the right to develop their own special relationship.
William and Elizabeth Stern are extraordinarily good parents who are devoting themselves to the nurturing and development of their daughter and their daughter is firmly bonded to them. Melissa is a resilient child who is no less capable than thousands of children of broken marriages who successfully adjust to complex family relationships when their parents remarry.

III.
Melissa's adjustment and the quality of her relationships with her parents and step-parents will depend largely on how well they accept and adjust to their respective roles. Mary Beth Whitehead Gould must accept and understand that Melissa is not Sarah and that her father and stepmother will be her *271 parental-role models and provide the day-to-day, parent-child interaction which will largely determine what kind of person Melissa will become. They will make the parental decisions concerning her religion, education, and moral standards. William and Elizabeth Stern must accept and understand that Melissa will develop a different and special relationship with her mother, stepfather, siblings, and extended family, and that these relationships need not diminish their parent-child relationship with Melissa.
The court does not underestimate the great difficulty the parties will have in accepting the others' role in Melissa's life. Family dreams have been shattered, insults and false accusations have been exchanged, and lies and deceptions made in the heat of litigation. However, family tragedies in our society are not uncommon and parents often are called upon to make sacrifices arising from unforeseen circumstances. In the context of family problems frequently seen by Family Court judges, the causes of the parties' estrangement do not appear insurmountable.
Melissa is a healthy, bright, attractive child with a mother, father, and stepmother who love her dearly and are obviously willing to make great sacrifices on her behalf. Her tender age has protected her from the notoriety of the much publicized trial and her parents have the opportunity to plan for her further protection in the future should the need arise. She has not suffered the agony of a broken marriage of parents and will be able to develop individual relationships with her parents and stepparents from infancy.
The parties do not have the emotional scars of a failure of an intimate relationship intertwined with that of their child. They have never been emotionally involved and should be able to make rational decisions in their mutual best interests and the best interest of Melissa.
*272 The parties are financially able to provide for themselves and Melissa and both have good homes in good communities with facilities and programs for children.
Melissa's best interests require that the parties do more than merely comply with the court's orders concerning visitation. It is imperative that the parties communicate freely with one another concerning Melissa's needs, not contradict one another concerning parent-child decisions, and maintain a flexible attitude toward visitation to meet the changing needs. The court finds that the parties will benefit by counselling in overcoming initial communication barriers, establishing visitation guidelines, and receiving necessary professional advice. Therefore, the court will appoint a mental health professional and direct that the parties participate in such counselling as the mental health professional shall deem advisable.

IV.
The parties and their expert witnesses all agree that publicity concerning Melissa should be avoided. The court's decision is based, in part, on the parties' representations that they will not discuss publicly their relationship with Melissa and her personal activities. Each of the parties has a right to rely on the others' representation concerning their and Melissa's right to privacy and, therefore, the court will enter an order enjoining and restraining each of the parties from publicly discussing their relationship with Melissa or her personal activities without prior approval of the court. In like manner, the parties have represented that they have no intention of selling any "movie rights" they may have concerning "Baby M" as the sale of such rights may permit the parties, Melissa, or their activities to be fictionally portrayed. Therefore, the court will restrain and enjoin the parties from the sale of any such rights they may have without prior approval of the court. The court will not infringe on the parties' right to communicate publicly *273 on the issue of surrogate parenting and their personal experiences so long as they do not affect Melissa's right to privacy.

V.
Mary Beth Whitehead Gould is a full-time homemaker allowing more flexibility in the scheduling of visitation. The court suggests that the parties take advantage of this situation and schedule visitation to meet their individual and family needs. If they cannot otherwise mutually agree, visitation shall take place in the following manner:
Weekly Visitation. Mary Beth Whitehead Gould shall have unsupervised visitation one day each week between the hours of 10:30 a.m. and 4:30 p.m. commencing immediately. In order to provide a transition from supervised to unsupervised visitation, William Stern shall take Melissa to the Edna Conklin Youth Center on the initial three visits and give her directly to her mother. Her mother can then take her home and return her to the Sterns' residence. Thereafter, Melissa's father shall take Melissa to her mother's residence and the mother shall return Melissa to her father's residence. Commencing in September 1988, the weekly visitation shall be increased by one additional day every other week.
Overnight Visitation. Commencing April 1989, the additional biweekly visitation days shall be expanded to two days and Melissa shall remain overnight with her mother.
Holiday Visitation. The court recognizes that the parties have two distinct family units and finds that it is in Melissa's best interest that she spend Christmas Day, Mother's Day, and Father's Day with the Sterns. Because children normally have birthday parties with their friends, Melissa shall also spend her birthdays with the Sterns. Melissa shall spend one day during the Christmas holidays and the following alternate holidays with her mother: Easter Day, Memorial Day, Fourth of July, Labor Day, and Thanksgiving Day. Melissa shall spend Jewish holidays of her father's choice with him. When a conflict *274 occurs between a regular visitation day and a holiday Melissa will spend with her father, a mutually-convenient day for visiting with her mother shall be substituted.
Vacation Visitation. Commencing with the summer of 1989, Melissa shall spend one two-week vacation period with her mother which shall be selected no later than March 1 each year.
The court finds that it is in Melissa's best interest that the specific dates of visitation and arrangements for court-ordered counselling shall not be revealed publicly and shall be contained in a sealed order of the court. Should the need arise in the future to make application to the court concerning visitation, it shall be on petition and order to show cause in order to protect Melissa's best interest and any necessary hearings will be closed pursuant to R. 5:3-2.