715 A.2d 1030 (1998)
314 N.J. Super. 605
In the Matter of the ADOPTION OF an ADULT BY C.K.
Superior Court of New Jersey, Chancery Division, Family Part, Somerset County.
Decided April 3, 1998.
Joan McSherry, for plaintiff C.K.
Roger C. Peterman, Haworth, for petitioners E.S. and W.S.
HOENS, J.S.C.
Before the court is the application of C.K., an adult, who seeks to adopt R.S., also an adult. R.S. has consented to the adoption and both parties fervently wish it to proceed. In fact, in a separate proceeding conducted during the pendency of this matter, R.S. has already successfully petitioned the court for an order permitting her to change her name so as to assume the surname of her proposed adoptive parent, which petition has been previously granted by this court. Prior to the date set for the adult adoption proceeding, R.S. advised E.S. and W.S., the parents who had adopted her as an infant and in whose household she was raised, but from whom she is now estranged, of the impending adoption. E.S. and W.S. then petitioned the court for an order requiring R.S. to serve them with notice of the proceeding and granting to them an opportunity to appear at the hearing on the adoption to be heard. They rely on the decision of the Honorable Marilyn Herr in In re the Adoption of an Adult by V.A., 294 N.J.Super. 400, 683 A.2d 591 (Ch.1996) as the support for their application. The court received extensive briefs directed to the issue of the propriety of requiring notice to a parent in an adult adoption and entertained oral arguments relating to the issue of notice and the related question of the nature of the proceeding to be had in the event that the parent wishes to be heard in opposition to the proposed adoption. Moreover, the court received numerous letters and similar *1031 documents from family members of R.S. seeking to be heard on the issue of whether granting the adoption would in fact be in the interest of or for the benefit of R.S. Because I disagree with the analysis and conclusions reached by Judge Herr in the In re V.A. decision, I decline to follow the procedure she devised of requiring that notice be given to the parents of the adult to be adopted and I issue this opinion as my statement of reasons.
An explanation of the legal and theoretical underpinnings of Judge Herr's opinion is essential for an understanding of my conclusions. In In re V.A., a step-parent sought to adopt the adult child of his spouse. The spouse had given her consent as had the proposed adoptee. No notice had been given to the proposed adult adoptee's natural father. In her opinion, Judge Herr analyzed the adult adoption statute, N.J.S.A. 2A:22-1 to -3 and held that the natural parent of the adult to be adopted had a due process right which gave rise to a right to notice and an opportunity to be heard in connection with the adoption. Citing well settled principles of due process and its requirements, see Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1977); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950), the court concluded that wherever a fundamental interest of "life, liberty or property" is involved, a due process right attaches. The court then turned to an analysis of adoption and the interests that a natural parent has in a child and, relying solely on case law involving children, see e.g., Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), Sorentino v. Family & Children's Soc. Of Elizabeth, 74 N.J. 313, 326, 378 A.2d 18 (1977); In re Adoption of Child by D.M.H., 135 N.J. 473, 641 A.2d 235 (1994), and solely on the statutes relating to the adoption of children, see, e.g., N .J.S.A. 9:3-45, concluded that the parent of an adult seeking to be adopted has identical interests which give rise to a right to notice and an opportunity to be heard. While this court agrees with the analysis of In re V.A. as it pertains to the issue of due process in general, and while this court agrees with Judge Herr's analysis of the elements relating to the adoption of children, it does not agree that the interest or the rights of a parent of an adult are identical to those of the parent of a minor child and thus does not agree with Judge Herr's conclusion that the parent of an adult to be adopted is entitled to notice or an opportunity to be heard.
Before proceeding with this analysis, it is appropriate to note simply for the sake of clarity that E.S. and W.S. stand in the place of natural parents with respect to R.S. by virtue of their adoption of her as an infant many years ago. As all parties to this matter concede, that process of infant adoption created in E.S. and W.S. the same rights, duties and obligations with respect to R.S. as if she had been born to them. For the purpose of avoiding any unnecessary lack of clarity in the analysis of the matter now before this court, they will be referred to simply as her parents.
The analysis begins with the recognition that the statute which governs adult adoptions in New Jersey is markedly different from the statute which governs infant adoptions. Whereas the infant adoption statute specifically provides for and requires notice to be given to the natural parents of an infant to be adopted, see N.J.S.A. 9:3-45, and while that statute includes standards for evaluating whether the adoption may proceed in the face of an objection of a natural parent, see, N.J.S.A. 9:3-46, the statute governing adult adoptions is silent concerning any similar requirement. Indeed, the adult adoption statute is remarkably brief and succinct. See N.J.S.A. 2A:22-1 to -3. That statute provides as follows:
The superior court, shall allow an unmarried person of full age, a husband with his wife's consent, a wife with her husband's consent or a husband and wife jointly to adopt an adult person and may change the name of the adult, if the court is satisfied that the adopting parent or parents are of good moral character and of reputable standing in their community, and that the adoption will be to the advantage and benefit of the person to be adopted.
The statute thus lists few requirements for an adult adoption to be permitted, requiring only that the adopting individual be an adult, that they have spousal consent if married, that they be of good moral character and that the adoption be to the advantage and *1032 benefit of the adult to be adopted. N.J.S.A. 2A:22-2 adds further requirements, namely that there be a ten year age difference between the parties, that the person to be adopted acknowledge in writing their desire to be adopted and if requested, that their name be changed, although the statute also gives the court the power to waive these requirements if the court finds that the adoption would promote the best interests of the party to be adopted. There is in this statute no suggestion of a need for notice to a parent or of a requirement for an inquiry of any kind concerning the interest a parent might have in the proceeding.
In this regard, the statute is silent in comparison to the extensive requirements contained in the statute governing infant adoptions. It omits any designation of any parties who are entitled to notice, it omits any mechanism for determining whether the objection of a parent can be overcome, and it omits any procedure for investigations and waiting periods and similar safeguards all of which are clearly delineated in the statutes governing infant adoption. These statutes are different for good reasons. While the courts have repeatedly emphasized the rights of natural parents to participate in the upbringing of their children and while that right is indeed regarded as a fundamental right of the parent, the statute governing infant adoption provides for a mechanism which permits the court to terminate those rights and sets forth the standards which govern that determination. While the focus of the infant adoption statute is indeed the best interests of the child, the right of the natural parent is safeguarded by the requirement of notice and an opportunity to be heard. The need to address and balance these competing rights in and of itself mandates the particular requirements of the statute regarding infant adoptions. It is significant that the focus of the grounds set forth in the infant adoption statutes on which the objection of a parent may be overcome and the parent's rights terminated is on the parent's performance of the regular and expected functions of a parent, see N.J.S.A. 9:3-46, for it underscores the plain fact that the right of the parent to object in that context arises from the parent's fundamental right to do just thatto act as a parent does toward his or her child. Failing that, the parent simply has no right to object.
There are thus good and sound reasons why the parent has a right to notice in the context of infant adoption. But those rights and those interests do not exist as between a parent and an adult offspring. To begin with, an individual who reaches eighteen years of age is not a child, but an adult, who is automatically imbued with a wide variety of rights and choices with which their parents generally have no right to interfere. They may marry, they may vote, they may change their religion, they may adopt lifestyles and pursue activities which may be both offensive and abhorrent to their parents. And as long as they cannot be said to be mentally incapacitated and thus in need of a guardian, they are free to pursue all of those life choices regardless of their parent's wishes or their parent's views as to the wisdom of those choices. The adult adoption statute implicitly recognizes these fundamental rights of the adult seeking to be adopted. Its different requirements and its different focus as compared with the focus and requirements embodied in the statutes governing the adoption of children recognizes the fact that with adulthood come rights and responsibilities of the adult not enjoyed by any child. And with those rights comes the extinction, in reality, of the parent's right to object.
Thus, we confront the argument here, as in In re V.A., that notwithstanding that fundamental distinction between an adult and a child, that a parent of an adult has a right to receive notice and, ultimately, to be heard as to the adoption. To so find, the court in In re V.A. held implicitly that the right to raise one's child as one sees fit survives adulthood, that it represents as well a parent's ongoing fundamental right of life, liberty or property which is the necessary prerequisite for the attachment of due process rights. This court does not agree with that analysis or with that conclusion. There is no suggestion in case law or in statute that these rights, fundamental and well safeguarded as between parent and child, survive as fundamental rights of a parent in relation to a child who reaches adulthood.
The only suggestion in this case that the parent of an adult has such an abiding interest *1033 as to amount to a life, liberty or property right is the argument made by E.S. and W.S. that following adult adoption, the right of the adult now adopted to inherit from her former parent by way of intestate succession is not extinguished. See N.J.S.A. 2A:22-3 (a). Based on this, they argue that parent's assets may be inherited by their former child without their knowledge of that individual's adoption by another, through intestate succession. They regard the right to rely on intestate succession as a valuable property right which gives rise to the due process right to be given notice of and to be heard as to the adoption. This court does not agree with this argument. First, as to intestate distribution, it is the Legislature which retains plenary power, and not the individual. See Cassano v. Durham, 180 N.J.Super. 620, 622, 436 A.2d 118 (Law Div.1981). Thus the statutes regarding intestacy, see N.J.S.A. 3B:5-1 to -14 do not create rights in the putative decedent. Second, if the only property right to be asserted by the parent is the right to ensure that their assets be inherited by children who have not been adopted by others, then the only potential right they would have would be a right, after the fact, to notice that the adoption had occurred. It would not entitle them to notice of an impending adoption nor to an opportunity to be heard. Next, the suggestion that the laws governing intestacy might create a due process right ignores the fact that those laws are not intended to operate to distribute an individual's estate and thereby to create a property right in that individual. Rather, those laws operate to create rights in the presumed eventual heirs and only in the event that an individual fails to direct otherwise in a will. Those laws surely do not create the far reaching due process right between a parent and an adult child, as E.S. and W.S. suggest. If E.S. and W.S. were correct, the laws governing intestacy would also create in them rights to be heard on all manner of similar issues which might be so affected, including the rights of their children to marry or procreate and the rights of their siblings and other kin in similar regards. Clearly, if E.S. and W.S. have not written a will, some of their assets may devolve to this particular adult. But this does not entitle them to be heard or to interfere with the choice by this adult to be adopted by another. At best, it entitles them to write a will and direct that their assets be distributed as they wish.
Based upon the foregoing analysis and principally because of the fundamentally different rights and obligations of parents to children on the one hand, and of parents to adult children on the other, this court cannot agree with the analysis of the court in In re V.A. that the petitioners E.S. and W.S., or any parents, have an interest in their adult child and her choice to be adopted by another which rises to the level of an interest in life, liberty or property and which creates in them a due process right to notice of the impending adoption of their adult daughter or a right to appear or be heard in connection with that proceeding. For all of the foregoing reasons, the application of E.S. and W.S. for notice and an opportunity to appear and be heard is denied. Further proceedings as are appropriate in connection with this matter will be scheduled in the ordinary course.