43 N.J. Super. 315 (1957)
128 A.2d 506
SANTI BUCCA, PLAINTIFF,
v.
STATE OF NEW JERSEY, GROVER C. RICHMAN, JR., ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, AND CHARLES V. WEBB, JR., PROSECUTOR OF ESSEX COUNTY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 10, 1957.
*316 Mr. Milton S. Kramer, attorney for the plaintiff.
Mr. Grover C. Richman, Jr., Attorney-General of New Jersey (Mr. John W. Noonan, Legal Assistant and of counsel).
HAND, J.S.C.
The plaintiff in this proceeding seeks a judgment under the Uniform Declaratory Judgments Act, N.J.S. 2A:16-50 et seq., declaring his marriage to his *317 niece in Italy entitled to full recognition in the State of New Jersey and that plaintiff's cohabitation in the State of New Jersey with his said wife will not be in violation of the provisions of N.J.S. 2A:114-1, which prohibits the crime of incest.
Santi Bucca, a resident of the City of Newark, New Jersey, married his niece, Antonina Crisafulli, on June 20, 1950 in the municipality of Marcellona, in Italy.
Antonina Crisafulli is the daughter of the sister of Santi Bucca.
Article 87, paragraph 3, of the Italian Civil Code provided that an uncle and niece may not contract marriage between themselves; but that the head of the State or the authorities to whom authority is delegated, can grant dispensation in the case of a marriage between uncle and niece. Santi Bucca alleges that such dispensation was received and that the marriage was a legal and valid marriage under the laws of Italy, where it was contracted. This allegation is not disputed, and for the purpose of this opinion will be considered as established.
Plaintiff desires to bring his alleged wife to New Jersey but the Attorney-General of this State has contended that the marriage is not entitled to recognition in this State and that, if plaintiff and his wife cohabit together in New Jersey, they will be subject to prosecution on a charge of incest.
A marriage between an uncle and niece, if performed in the State of New Jersey, is void. See R.S. 37:1-1:
"A man shall not marry * * * the daughter of his brother or sister. * * * A marriage in violation of any of the foregoing provisions shall be absolutely void."
If an uncle and niece marry in New Jersey, they are guilty of the crime of incest. See N.J.S. 2A:114-1:
"Persons who intermarry within the degrees prohibited by law, or who, being related within such degrees, together commit fornication or adultery, are guilty of incest, and each shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 5 years, or both."
*318 The question before the court is whether this marriage, valid as performed in Italy, but void if it had been performed in New Jersey, will be recognized by the courts of New Jersey as valid.
The following statements of law are applicable:
55 C.J.S., Marriage, § 4, p. 811:
"The general rule is that the validity of a marriage is determined by the law of the place where it was contracted * * *."
King v. Klemp, 26 N.J. Misc. 140, 147, 57 A.2d 530 (Ch. 1947):
"It is a well known principle that the validity of a marriage contract is to be determined according to the lex loci contractus."
117 A.L.R., page 186:
"The rule that a marriage valid where celebrated is valid everywhere, is, with few exceptions, so well recognized by the courts, for the reasons of general policy, that it has become almost a maxim in the field of conflict of law. Exceptions to the general rule are * * * (2) marriages prohibited by the public acts of the forum for reasons of local distinctive policy."
Restatement of the Law, Conflicts, section 132:
"A marriage which is against the laws of the state of domicile of either party, though the requirements of the law of the state of celebration have been complied with, will be invalid everywhere in the following cases: * * * (b) incestuous marriage between persons so closely related that their marriage is contrary to a strong public policy of the domicile."
Is the recognition of such a marriage as valid contrary to the public policy of the State of New Jersey?
Apparently this question is one of novel impression in this State.
An examination of the authorities in other states indicates that the majority opinion grants recognition to such marriages, whereas the minority view refuses recognition.
However, the statutes vary, and therefore the soundest *319 approach to the problem is to consider the public policy of New Jersey, historically and as reflected in our statutory enactments.
The first statute which provided that incest was a crime was enacted in 1682 by the General Assembly of East Jersey. See Leaming and Spicer, Grants and Concessions of New Jersey, page 243:
"* * * that if any Person or Persons whatsoever, shall from and after the Five and Twentieth Day of March, One Thousand Six Hundred Eighty and Three, Marry or have the Carnal Knowledge of the Body of his or her Grandfather or Grandmother, Father or Mother, Brother or Sister, Son or Daughter or Grandchild, Father's Brother, or Sister Mother's Brother, or Sister Father's Wife, Mother's Husband, Son's Wife, Daughter's Husband, Wife's Mother or Daughter, Husband's Father or Son, all and every such Offences, are hereby judged and declared Incest, and every such Offence, shall be and is hereby adjudged Felony, and every Person Offending therein, and confessing the same, or being thereof convicted by Verdict, by Indictment, or presentment before any of the Judges or Justices of the Court of Common Right, shall suffer as in Cases of Felony, and all and every such Marriage, and Marriages, are hereby declared and adjudged void in Law, to all Intents and Purposes whatsoever, * * *."
It is to be noted that the Colony of West Jersey at no time adopted a law which declared incest to be a crime.
In 1795 the Council and General Assembly of New Jersey adopted "An Act concerning marriages"; see Pennington, "Laws of the State of New Jersey" (1821 rev.), p. 180:
"No man or woman shall intermarry within the degrees hereafter named * * *."
The relationship of uncle and niece was included.
However, the 1795 act did not declare such a marriage void, nor was a penalty provided until 1796 by a subsequent statute. See Revision of 1821, sec. 13, p. 247, setting forth the statute adopted on March 18, 1796, entitled "An Act for the punishment of crimes":
"All persons who shall intermarry within the degrees prohibited by law, shall be adjudged to be guilty of incest and a misdemeanor, and on conviction, shall be punished by fine, not exceeding five hundred *320 dollars, or by imprisonment at hard labor, not exceeding eighteen calendar months, or both, at the discretion of the court."
However, this statute did not declare such marriages to be void.
In the case of Boylan v. Deinzer, 45 N.J. Eq. 485 (Ch. 1889), it was held that a marriage between a man and a woman, who were related within the prohibited degrees, was voidable, not void.
However, in 1910 it was specifically enacted that incestuous marriages were absolutely void; see L. 1910, page 477.
Criminal statutes must be strictly construed. See State v. Waxman, 93 N.J.L. 27 (Sup. Ct. 1919); State Bd. of Forest Park Res. Com'rs v. McClosky, 87 N.J.L. 470 (Sup. Ct. 1915); State v. Horn, 16 N.J. Misc. 319, 1 A.2d 51 (C.P. 1938).
There is no doubt that the statute has for nearly half a century very clearly set forth the crime of incest and has declared such marriages absolutely void, if performed within the borders of this State.
Should a criminal statute which is so directly applicable to this problem in its verbiage and application, be thwarted by indirection?
Must a void marriage be given vitality and infused with legality because it is performed in a location outside of this State?
The purpose of this proceeding is to enable plaintiff to bring his alleged wife to New Jersey and to establish their domicile in this State. Attention is directed to the statement in Selected Readings on Conflict of Laws, at page 736:
"* * * the state most interested in the validity or nullity of the status of marriage is that in which the purported family will live, and, on principle, its creation or the refusal to create it is properly referable to the law of that state. * * *"
Further at page 738,
"* * * If the parties intend at the time of the ceremony to establish a family domicil in any state, the validity of the status is determined by the law of that state."
*321 In the instant case, plaintiff was a resident of New Jersey before he visited Italy and married his niece there. He has now returned to this State and wishes to bring his alleged wife here. There is nothing in the moving papers to indicate that plaintiff intended to remain in Italy and establish his domicil there. It may, therefore, be inferred that it was the intention of these parties at the time of the ceremony in Italy to establish their family domicil in New Jersey. Therefore, the validity of the status of these parties should be determined by the law of New Jersey.
It is interesting to note that the dispensation from the impediment to the marriage of these parties was granted by the Vicar-General of Parish St. Maria Dell'idria, for these reasons:
"* * * especially in order to avoid scandal and by reason of poverty * * *."
While these assigned reasons may have been material to the granting of the dispensation in question, neither of these grounds is recognized by the courts or statutes of New Jersey as a means for validating an absolutely void marriage.
A cursory examination was made of the possibility of a deleterious effect upon the offspring of a marriage between an uncle and niece.
Geneticists agree generally that the only effect upon offspring would be an increased chance of transmitting any disease or weakness which already existed in the blood line. Such incestuous relationship may be treated not as biologically harmful but only as sociologically improper.
In spite of the above medical opinion, the court, nevertheless, concludes that the public policy of New Jersey is opposed to such incestuous marriages and that such marriages should not be recognized as valid.
Polygamy has been outlawed by federal statutes. Polygamy is practiced in various parts of the world. Neither the United States Government nor the State of New Jersey would recognize polygamous marriages, because they are definitely against our public policy.
*322 Plaintiff cites and emphasizes the case of Campione v. Campione, 201 Misc. 590, 107 N.Y.S.2d 170 (Sup. Ct. 1951), recently decided in New York State. While the facts in the Campione case are similar to those of the instant case, nevertheless the Attorney-General of New York State favored recognition of the Italian marriage; whereas in New Jersey the Attorney-General has actively opposed recognition.
The interpretation of the public policy of New Jersey, pertaining to the question under consideration, has been decided by the Attorney-General. Furthermore, the statutes of New Jersey have gradually and progressively become more severe and unyielding on the question of marriages between parties within the prohibited degrees of consanguinity; the term "incest" has become part of the criminal law of this State; the relationship of uncle and niece is clearly comprehended within the term "incest"; the statutes, as traced herein, first declared such a marriage to be voidable but for the past 50 years have declared it to be absolutely void. In the opinion of this court, the public policy of New Jersey has been determined and should be declared accordingly.
The court holds that the recognition of the marriage as valid by the State of New Jersey would be contrary to the public policy of this State.
Therefore, the plaintiff's prayer for judgment declaring that his marriage to Antonina Crisafulli is entitled to full recognition in the State of New Jersey, and that plaintiff's cohabitation in the State of New Jersey with his said wife will not be in violation of N.J.S. 2A:114-1, is denied.