934 A.2d 64

IN THE MATTER OF THE ADOPTION

OF A CHILD BY NATHAN[1] S.

Superior Court of New Jersey
Chancery Division Family Part
Bergen County

Decided May 2, 2006.

---

[1] The names used in this opinion are fictitious to protect the privacy of the parties and child.

*Francine Del Vescovo*, for plaintiff (*Lomberg & Del Vescovo, L.L.C.*).

*Harry Katz*, for defendant (*Bergen County Mental Health Law Project*).

KOBLITZ, P.J.F.P.

The issue presented in this matter is whether a grandfather may adopt his granddaughter to co-parent with his daughter, thereby terminating the parental rights of the biological father. The child lives with her mother and maternal grandparents. The father has a history of mental health problems, substance abuse, and criminal involvement. The grandfather argued that an adoption would afford him legal rights and protections necessary to continue to care for his granddaughter as well as eliminate the negative influence of the father. The father argued that New Jersey law does not allow a grandfather to adopt a child and become a co-parent with his own daughter. Accordingly, the father has moved for summary judgment to prevent this adoption from proceeding. For the reasons stated below, the Court grants

the father's request for summary judgment and holds that a married grandfather cannot become a co-parent with his daughter by adopting his granddaughter when the biological father is alive.

The Court will summarize the facts in the light most favorable to the grandfather and explore the circumstances in which the Court may terminate a parent's rights and permit an adoption to proceed. Finally, the Court will explain why the case law should not be expanded to allow this adoption.

## STATEMENT OF FACTS

These facts are found in the light most favorable to the grandfather as is appropriate in summary judgment applications. *See Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 523, 666 A.2d 146 (1995). John, the father, began using illegal substances as a child, attending his first treatment center when he was eleven years old. He was expelled from school multiple times, arrested twenty seven times, and incarcerated many times. He was diagnosed with bipolar disorder. John has been treated for his substance abuse and mental health issues off and on for the past twenty eight years.

John and Donna married on September 6, 1996. Tanya was born a year later. The following year Donna and Tanya moved in with Donna's parents.

In October 2002, Tanya, then five years old, told Donna that John had sexually molested her during a visit. After the Division of Youth and Family Services (DYFS) became involved, a family evaluation reported that John had probably sexually molested Tanya once. Although John was arrested and charged with first degree aggravated sexual assault and second degree endangering the welfare of a child, the State dismissed the indictment prior to trial and DYFS closed its case without a court finding.

John and Donna divorced on May 21, 2003. A year later Donna obtained a domestic violence Final Restraining Order barring John from any contact with Donna or any members of her family, including Tanya.

Nathan, Donna's father and Tanya's grandfather, filed a Verified Complaint for Adoption on July 25, 2005, in which he stated that he wanted to adopt Tanya to give her emotional, financial, and physical stability. Nathan's wife, Jeanette, Tanya's biological grandmother, filed the Consent of Spouse to Adoption on July 25, 2005, and Donna filed the Consent of Birth Parent to Adoption. Donna also filed a Certification that described the abuse she and Tanya had experienced at the hands of John and asked the Court to terminate John's parental rights by allowing her father to adopt Tanya. Nathan claimed that John had abused both his daughter and granddaughter. He also claimed that John's parental rights should be terminated because John had not fulfilled his child support obligation over the years. To date, John has paid $3,618.92 in support and owes $11,516.08 in arrears.

John filed an answer to Nathan's adoption complaint stating his opposition to the adoption. He subsequently filed a summary judgment motion.

John contended that the Court should not allow this adoption to proceed because a married grandfather should not be a co-parent with his daughter while the biological father survives. Nathan argued that New Jersey does not explicitly bar such adoptions and has in recent years expanded the idea of what constitutes a family for adoption purposes. Additionally, Nathan indicated that he has no intention of informing the child of his change in status. Tanya would continue to relate to him only as a grandfather.

A court grants summary judgment when no genuine issue as to any material fact exists and the moving party is entitled to a judgment or order as a matter of law. *R.* 4:46–2(c); *see also Brill*, 142 *N.J.* at 540, 666 *A.*2d 146. The court should evaluate whether the evidence presents factual disputes that must proceed to trial or if the matter is so one-sided that a party must prevail as a matter of law. *Id.* at 536, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby*, 477 *U.S.* 242, 251–2, 106 *S.Ct.* 2505, 91 *L.Ed.*2d 202 (1986)). When determining whether to grant summary judgment, a court must also consider the policies driving

summary judgment, such as allowing each litigant with a legitimate claim to proceed to trial, protecting litigants from frivolous lawsuits, and preserving judicial resources for meritorious claims. *Id.* at 541–2, 666 *A.*2d 146.

█ After construing the facts favorably to the grandfather, the Court will not allow this adoption application to proceed. The New Jersey legislature and courts do not and should not allow a maternal grandfather to become a co-parent with his daughter by adopting a grandchild when the biological father survives and the maternal grandmother lives in the home. As explained below, this Court finds that the legislature has already contemplated the situation Nathan and other grandparents may find themselves in and has provided adequate remedies outside of adoption.

## A GRANDFATHER MAY NOT BECOME A CO-PARENT WITH HIS DAUGHTER UNDER NEW JERSEY LAW.

Nathan argued that the State should allow him to adopt his granddaughter because he has acted as her father while John has not performed any parental duties. John countered that the Court should not consider his performance as a parent or even Tanya's best interests because New Jersey does not permit this type of adoption to occur.

New Jersey has created only two methods for terminating a parent's rights. The first is a proceeding in which DYFS, or in rare cases another individual, acts to terminate parents' rights when a parent has been found by a Court to have abused or neglected a child or has been convicted of a crime against a child. *N.J.S.A.* 30:4C–15 (2006). DYFS does not intervene if the child is in the custody of a parent who provides a safe and secure home for the child, even if the other parent poses a risk to the child. The second method of terminating parental rights is an adoption in which a parent either surrenders his or her rights voluntarily, under *N.J.S.A.* 9:3–41 (2006) or a court finds that the parent has not fulfilled his or her parental functions and that the adoption is in the child's best interest. *N.J.S.A.* 9:3–46 (2006).

A private party is not statutorily permitted to move to terminate a parent's parental rights outside of adoption unless the court has entered a conviction under *N.J.S.A.* 9:6 et seq. against the parent because of abuse, abandonment, neglect or cruelty to the child or the parent has been convicted of murder, aggravated manslaughter, or manslaughter, or attempting, soliciting, or conspiring to commit one of these crimes against a child of the parent. *N.J.S.A.* 30:4C–15 (a) and (f) (2006).

This adoption complaint is an effort by the maternal grandfather, with the agreement of the maternal grandmother and the mother, to exclude the father permanently from Tanya's life. The Court recognizes that John does not have a positive parent-child relationship with his daughter. John was accused of sexually molesting her on one occasion. Tanya also recalled instances in which John physically abused her mother. As a result of these experiences, Tanya had nightmares and fears her father. It remains to be seen if John will one day overcome his addiction, treat his mental illness, and become a positive factor in Tanya's life. Although John has not consistently paid his child support obligation, he has paid $3,618.92 in support to date. The Social Security Administration approved John's application for Social Security Disability benefits, and he is currently ordered to pay $10.00 per week in child support and $10.00 per week toward child support arrears. Tanya may at some point inherit through her father or derive another public entitlement.

█ The New Jersey legislature did not intend for two persons outside of a marriage or partnership to adopt children together. New Jersey law states, "The entry of a judgment of adoption shall: (1) terminate all parental rights and responsibilities of the parent towards the adoptive child except for a parent who is the spouse of the petitioner." *N.J.S.A.* 9:3–50c (1) (2006). Courts have interpreted this statute to allow a stepparent or a partner in a same-sex relationship to adopt when it is in the child's best interest. *E.g., In re the Adoption of Two Children by H.N.R.*, 285 *N.J.Super.* 1, 3, 666 *A.2d* 535 (App.Div.1995). Nathan is not the

spouse, nor the same-sex partner of Donna; instead, he is her biological father married to her biological mother. Only those in a marriage or marriage-type partnership may adopt children together.

Although there is absolutely no allegation of incest occurring within this home, it might appear that the Court created an incestuous relationship if it allowed a grandparent to co-parent his biological grandchild with his daughter. An adoption creates the legal presumption that the child was born in wedlock of the adoptive parents. *N.J.S.A.* 9:3–50 (2006). New Jersey has deemed any incestuous activity the criminal offense of sexual assault. *N.J.S.A.* 2C:14–2a (2)(a) (2006); *N.J.S.A.* 2C:14–2c (3)(a) (2006). Incestuous marriages are void. *N.J.S.A.* 37:1–1 (2006); *Bucca v. State,* 43 *N.J.Super.* 315, 320–22, 128 *A.*2d 506 (Ch.Div. 1957) (noting that New Jersey has made such marriages void since 1910). A New Jersey court has taken the exceptional step of vacating an adoption to avoid an incestuous marriage between father and adopted daughter who had a child together and wished to marry. *In re Adoption of M.,* 317 *N.J.Super.* 531, 533–4, 722 *A.*2d 615 (Ch.Div.1998). The court did this to avoid the child being stigmatized as a child born of incest. *Id.* This Court will not legally change Donna's and Nathan's father-daughter relationship to a co-parent relationship and contravene New Jersey public policy against incest. This situation is further complicated by Nathan's wife, Jeanette. Should this Court approve the adoption, Nathan would become the legal father/biological grandfather of Tanya. He would be married to Tanya's biological grandmother, making her the grandmother/stepmother. Nathan would then co-parent with Tanya's mother, his biological daughter.

## NEW JERSEY SHOULD NOT EXPAND ITS CASE LAW TO ALLOW THIS ADOPTION.

Since New Jersey does not explicitly allow for a grandparent to become a co-parent with a child, this Court must determine if the law should be expanded to include this type of adoption.

The Appellate Division has stated that when the adoption statute does not specifically address the family structure the prospective adoptive parent proposes, a court must look beyond the specifics of the statute to the child's best interests. *In re the Adoption of Two Children by H.N.R.*, 285 *N.J.Super.* at 6–7, 666 *A.*2d 535 (citing *N.J.S.A.* 9:3–37 (2006)). In that case, the Appellate Division noted that the same-sex partners had been in a committed partnership for fourteen years at the time of their adoption application and had long anticipated having children together and it was in the children's best interests to have the biological mother's same-sex partner adopt the children. *Id.* at 3–4, 666 *A.*2d 535. The Court reasoned that the same-sex partner adoption could occur because previously a court had read the stepparent provision in *N.J.S.A.* 9:3–50(c)(1)(2006), which states that the "entry of a judgment of adoption shall: (1) terminate all parental rights and responsibilities of the parent towards the adoptive child except for a parent who is the spouse of the petitioner and except those rights that have vested prior to entry of the judgment of adoption," liberally to allow a biological father to adopt his children when he could not legally marry the mother due to her incompetence. *Id.* at 11, 666 *A.*2d 535 (citing *In re Adoption by A.R.*, 152 *N.J.Super.* 541, 378 *A.*2d 87 (County Ct.1977)). That court stated the stepparent exception "must be read against the peculiar factual setting of this case, and with an application of common sense." *Id.*

In its reasoning, the court also noted that forty eight other states allowed lesbian, gay or bisexual individuals to adopt children. *Id.* at 8–12, 666 *A.*2d 535. Furthermore, other states allowed same-sex second-parent adoptions. *Id.* No reported decision has been found in New Jersey or in any other state that allows a grandparent to become a co-parent with his own child by adopting his grandchild.

Nathan contends that his family is non-traditional and analogous to a family headed by a same-sex couple; therefore, the law should be expanded to include this adoption. However, Nathan's

family is, in fact, quite traditional. Grandparents frequently help to raise their grandchildren. It is not uncommon for a separated or divorced parent to live in a three-generation household. In holding that a zoning ordinance violated the Due Process Clause for barring a grandmother from living with her grandson, the Supreme Court noted almost thirty years ago that millions of individuals have benefited from this country's long tradition of grandparents caring for and living with their grandchildren. *Moore v. City of E. Cleveland*, 431 *U.S.* 494, 507–8, 97 *S.Ct.* 1932, 52 *L.Ed.*2d 531 (1977).

Many states, including New Jersey, have given grandparents legal rights and protections. New Jersey created kinship legal guardianship in part to afford legal rights and protections to grandparents who raise their grandchildren without either parent. *N.J.S.A.* 3B:12A-l(b) (2006). New Jersey created this guardianship to create stability for grandparents and grandchildren when adoption is not feasible. *Id.* A grandparent may overcome a parent's fundamental right to raise a child unimpeded and obtain visits with a grandchild if he or she proves that a child is harmed by not having visits. *N.J.S.A.* 9:2–7.1 (2006); *Troxel v. Granville*, 530 *U.S.* 57, 64, 120 *S.Ct.* 2054, 147 *L.Ed.*2d 49 (2000); *Moriarty v. Bradt*, 177 *N.J.* 84, 114–15, 827 *A.2d* 203 (2003), *cert. denied*, 540 *U.S.* 1177, 124 *S.Ct.* 1408, 158 *L.Ed.*2d 78 (2004); *Daniels v. Daniels*, 381 *N.J.Super.* 286, 290–1, 885 *A.2d* 524 (App.Div.2005). Also, grandparents may adopt their grandchildren over a biological parent's objection when both parents' rights have been terminated. *In re Adoption of a Child by J.D.S. II & C.S.*, 353 *N.J.Super.* 378, 382–3, 803 *A.2d* 123 (App.Div.2002).

Unlike a stepparent or a same-sex partner, Nathan is not a legal stranger to Tanya. He is her biological grandfather and may exercise the legal rights and protections listed above. Courts and the legislature extended the law to allow stepparents and same-sex partners to adopt children with a biological parent because those individuals had none of the legal rights or protections grandparents have. Without adoption, they would not have stand-

ing to ask a court for parenting time with a child, or pass property on to their *de facto* children without a will. Grandparents do have standing to petition a court for visitation with a child and may leave property through intestacy under *N.J.S.A.* 3B:5–4 (2006).

During oral argument Nathan stated that he wanted to provide financial support to Tanya through his Social Security income, give his property to her when he dies, and provide emotional support and physical security to her. No evidence in the record indicates that an adoption would help him achieve these goals. Nathan has voluntarily provided financial support to Tanya and indicates that he will continue to do so. It is questionable as to whether the Social Security Administration would accept a claim on Tanya's behalf as Nathan's child if the Court granted the adoption. The federal government might well view this status skeptically. Nathan has made Tanya a beneficiary of his estate, so she need not worry about losing his financial support after his death.

## *CONCLUSION*

To date, no court has allowed a grandparent to become a co-parent with his or her child through adoption. The legislature and courts have provided adequate legal protections and rights to Nathan and Tanya. Nathan seeks to adopt Tanya, not to provide greater protection for their grandparent-child relationship, but rather to terminate the biological father's rights contrary to New Jersey statutes and case law. Therefore, John's motion for summary judgment is granted.