DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**I.B.** and **J.S.,**
Appellants,

v.

**IN RE: ADOPTION OF Z.E.S.,** a child,
Appellee.

No. 4D17-1730

[March 7, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 2016-DR-000825.

John F. Schutz of John F. Schutz, P.L., West Palm Beach, for appellant, I.B.

Amy U. Hickman of Hausmann & Hickman, P.A., Boynton Beach, for appellant, J.S.

No brief filed for appellee.

GROSS, J.

This is an appeal from an order denying a petition for adoption. While all of the parties appear to have the child's best interests at heart, we affirm on a pure question of law–the petition was legally insufficient under the Florida Adoption Act, sections 63.012 *et seq.*, Florida Statutes (2016).

I.B. is the maternal grandmother of Z.E.S. (the "child"). She filed a petition under the Adoption Act to terminate her daughter's parental rights and adopt the child. I.B.'s husband, the child's maternal grandfather, consented to the adoption, but did not seek to adopt the child. The child's mother also consented to the termination of her parental rights and the adoption by I.B.

J.S. is the child's biological and legal father; he is not married to the child's mother. He joined in the petition to terminate the mother's parental rights and for the maternal grandmother to adopt the child. He did not consent to the termination of his own parental rights.

The petition was amended twice and ultimately came before the circuit court as a "Petition for the Termination of Parental Rights and Petition for Second Parent Relative Adoption." If the circuit court granted the petition, the father and maternal grandmother would be the child's parents.

The circuit court held an evidentiary hearing and listened to testimony from the father and both maternal grandparents. All of the witnesses testified that the father had been sharing parental responsibility with the maternal grandparents for two years due to the mother's alcoholism and that the child was thriving under this *de facto* co-parenting arrangement.

Shortly after the hearing, the court denied the petition, finding that the entry of judgment of adoption would sever the father's parental rights under section 63.172(1), Florida Statutes (2016). The cited subsection provides:

> (1) A judgment of adoption . . . has the following effect:
>
> (a) It relieves the birth parents of the adopted person, except a birth parent who is a petitioner or who is married to a petitioner, of all parental rights and responsibilities.
>
> (b) It terminates all legal relationships between the adopted person and the adopted person's relatives, including the birth parents, except a birth parent who is a petitioner or who is married to a petitioner, so that the adopted person thereafter is a stranger to his or her former relatives for all purposes . . . .
>
> (c) . . . [I]t creates the relationship between the adopted person and the petitioner and all relatives of the petitioner that would have existed if the adopted person were a blood descendant of the petitioner born within wedlock. . . .

*Id.* Appellants argue that subparts (a) and (b) are plain and unambiguous and that the father should retain his parental rights because as "a petitioner," he fits within the statutory exception. We find that, while the father joined the petition, he was not "a petitioner" within the meaning of the Adoption Act because he did not seek to adopt the child.

This is a case of statutory interpretation. While the subparts relied on by the Appellants appear unambiguous when viewed in isolation, "[i]t is

- 2 -

axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992). The statutory scheme at issue is the Adoption Act and because adoption is "wholly statutory in nature," it "can be decreed only in accordance with the statute." *Korbin v. Ginsberg*, 232 So. 2d 417, 418 (Fla. 4th DCA 1970).

Adoption is defined as:

> [T]he act *of creating the legal relationship* between parent and child *where it did not exist*, thereby declaring the child to be legally the child of the adoptive parents and their heir at law and entitled to all the rights and privileges and subject to all the obligations of a child born to such adoptive parents in lawful wedlock.

§ 63.032(2), Fla. Stat. (2016) (emphasis added).

An adoption proceeding begins with the filing of a petition, meaning "the filing of a verified, truthful application for adoption." *Rodriguez v. Adoption of Rodriguez*, 219 So. 3d 944, 946 (Fla. 3d DCA 2017). Section 63.112, Florida Statutes (2016), sets forth an explicit list of those items which <u>must</u> be included in the petition. Among the requirements, the petition "shall be signed and verified by the petitioner and … *shall state … [t]he reasons why the petitioner desires to adopt the person*." § 63.112(1)(i), Fla. Stat. (emphasis added).

Here, the father was named as "a petitioner" to the petition for adoption even though he did not "desire[] to adopt" the child, and a "legal relationship" already did "exist." This was an apparent attempt to avoid the statutory effect of a judgment of adoption which is to terminate a birth parent's parental rights "except a birth parent who is *a petitioner* or who is married to a petitioner." *See* § 63.172(1)(a)-(b) (emphasis added). However, calling the father "a petitioner" was a misnomer because the Adoption Act does not allow a parent, whose parental rights are intact, to petition to adopt his or her own child. *See* § 63.032(2) (defining adoption as the act of *creating* the legal relationship between parent and child where it did not exist); § 63.172(1)(c) (stating that the effect of a judgment of adoption is to "*create*[] the relationship between the adopted person *and the petitioner* . . . that would have existed if the adopted person were a blood descendant of the petitioner born within wedlock") (emphasis added); § 63.112(1)(i) (requiring a verified and truthful petition in which *the petitioner states* the reasons why he or she "desires to adopt the person.") (emphasis added).

Appellants cite *In re Adoption of D.P.P.*, 158 So. 3d 633 (Fla. 5th DCA 2014), as a case that allowed a parent to be a petitioner and to retain her parental rights following the child's adoption by a non-spouse. We find that *D.P.P.* is factually distinguishable and therefore unpersuasive.

In *D.P.P.*, a baby was born to a same-sex couple, and they filed a joint petition for stepparent adoption by the birth mother's partner. The trial court granted the adoption petition and entered a final judgment of adoption. *Id.* at 636. A year later, the birth mother sought to void the adoption on the ground that her former partner "was not qualified to seek a step-parent adoption." *Id.* The trial court vacated the adoption, finding "G.P. was not a step-parent or an unmarried adult seeking to adopt following the termination of C.P.'s parental rights." *Id.* "The [trial] court concluded that a petition for adoption filed by two unmarried adults fails to invoke the subject matter jurisdiction of the circuit court, and thus, the final judgment of adoption was void." *Id.*

*D.P.P.* is not directly on point because the appellate court, in reversing the trial court, focused on the trial court's determination that it lacked subject matter jurisdiction. It is cited here because the Fifth DCA, in *dicta*, found that the adoption by the unmarried couple "did not run afoul of the court's power to enter judgments of adoption" and that "the adoption decree was consistent with the intent of the Legislature set forth in section 63.022, Florida Statutes (2012)." *Id.* at 638 n.2.

While *D.P.P.* implicitly approves of a parent petitioning with a non-spouse to adopt her own child, that case cannot be stretched to cover the adoption proposed in this case because the petitioners here are not in a committed relationship so the proposed adoption is not "consistent with the intent of the Legislature." *Id.* The petitioners in *D.P.P.* were in a "committed" relationship at the time of the adoption and the child was born into a two-parent home where the parents were in a familial relationship with each other and the child. Sanctioning the adoption in *D.P.P.* was essentially sanctioning adoption by a stepparent because at the time, same-sex marriage was illegal in Florida. The Legislature has clearly stated its preference that an adoption result in "adoptive parents" raising the adoptee as if the child were "born to such adoptive parents in lawful wedlock." § 63.032(2).

We find that the petitioners in *D.P.P.* (the same-sex couple) are distinguishable from the petitioners in this case (the father and maternal grandmother). Here, the proposed parents are not married and are not in a "committed relationship" as that term is commonly understood. Here, the adoption will result in the child having two parents who live completely

separate lives in separate households with their only connection being shared custody and financial obligation for the child. Unlike the adoption in *D.P.P.*, we do not believe the proposed adoption in this case is "consistent with the intent of the Legislature."

Appellants also cite *M.D.C. v. B.N.M.J.*, 117 So. 3d 489 (Fla. 1st DCA 2013), as authority for the proposition that second-parent adoption by a non-spouse is sanctioned by Florida courts. In *M.D.C.*, the father's parental rights were terminated when the child was adopted by her stepfather. Years later, when the stepfather and the mother divorced, the birth father petitioned to adopt her. *Id.* at 490.

The trial court found that the end result would be that the child's legal parents would also be her biological parents, a circumstance supported by public policy. *Id.* However, the trial court found that the adoption was not authorized by section 63.042(2)(c), Florida Statutes (2012) (governing when a married person can adopt without his spouse joining as a petitioner), because the statute "did not envision the adoption contemplated here." *Id.*

The First DCA reversed, finding the "failure of M.D.C.'s spouse to join in the adoption is not fatal." *Id.* at 491. The court found the father qualified as an adoptive parent under the statute and that the trial court should have allowed the father to "proceed to an evidentiary hearing in which he would be given the opportunity either to show good cause why his present spouse did not join the adoption petition or to show that the adoption is in B.N.M.J.'s best interest." *Id.*

Because both the trial and appellate courts focused on whether the father was a person "who may adopt" under section 63.042(2)(c), *M.D.C.* is not directly on point. The case is cited by Appellants because the new family proposed in *M.D.C.* is similar to the new family proposed here–a married person who is otherwise qualified to adopt, petitioning to adopt and co-parent with the child's natural parent who is not the spouse of the petitioner.

We find, however, that like *D.P.P.*, the characteristics of the petitioners distinguish *M.D.C.* from the case at bar. The father in *M.D.C.* was properly named as a petitioner because his parental rights had previously been terminated. He was therefore permitted by statute as a "birth parent" (not a "parent") to join the petition as a petitioner. The father here is already a parent and cannot be a petitioner for the reasons set forth above.

In addition, the trial court in *M.D.C.* found that the end result of the proposed adoption (that the child's biological parents would also be her legal parents) was supported by public policy. In contrast, it is unclear whether public policy would sanction the end result in this case, where the child's father and the child's maternal grandmother would become co-parents. *See In re Adoption of M.R.D.*, 145 A.3d 1117 (Pa. 2016) (prohibiting the adoption of a child by her maternal grandfather who was joined in the petition by her mother); *In re Adoption of Child by Nathan S.*, 934 A.2d 64, 65 (N.J. Super. Ct. Ch. Div. 2006) (same, finding the legislature did not intend for two persons to adopt outside of marriage or partnership, and therefore "a married grandfather cannot become a co-parent with his daughter by adopting his granddaughter when the biological father is alive."); *but see Adoption of a Child Whose First Name is Chan*, 950 N.Y.S.2d 245 (N.Y. Surr. Ct. 2012) (adoption by two unmarried people, not in a relationship, was not barred by statute and petitioners were permitted to establish that adoption of a Cambodian child they brought to New York and raised was in the child's best interests).

While a myopic reading of subparagraphs 63.172(1)(a) and (b) allows a birth parent to be "a petitioner" to an adoption proceeding and thereby retain his parental rights, the Adoption Act as a whole precludes an individual with parental rights at the time of the petition from joining in an adoption proceeding as "a petitioner" because a petitioner is one seeking to adopt the child and a parent (whose rights are intact) cannot adopt his own child.

We recognize that "[t]he legal parameters and definitions of parents, marriage, and family have undergone major changes in the past several decades . . . ." *D.M.T. v. T.M.H.*, 129 So. 3d 320, 337 (Fla. 2013). We also recognize that the parenting arrangement proposed in this case may be in this child's best interests. However, the right to adopt a person in Florida is a privilege bestowed by the Legislature. For the court to entertain the petition, the proposed familial arrangement must be within the parameters allowed by the Adoption Act. Under the current version of the Act, this father, whose parental rights are intact, cannot petition to adopt his own child.

For these reasons, we affirm the trial court's order and remand for dismissal of the petition.

FORST and KUNTZ, JJ., concur.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*