**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3133-16T2
A-0635-17T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

K.M.,

    Defendant-Appellant,

and

R.A.,

    Defendant.

───────────────────────────────

IN THE MATTER OF N.A.,

    Minor.

───────────────────────────────

Submitted June 4, 2018 — Decided June 8, 2018

Before Judges Sabatino and Firko.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hudson County,
Docket Nos. FN-09-0304-16 and FG-09-0137-17.

Joseph E. Krakora, Public Defender, attorney for appellant K.M. (Meghan K. Gulczynski, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Kenneth M. Cabot, Deputy Attorney General, on the brief in A-3133-16; Ellen L. Buckwalter, Deputy Attorney General, on the briefs in A-0635-17).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Olivia Belfatto Crisp, Assistant Deputy Public Defender, on the briefs).

PER CURIAM

These related back-to-back appeals, which we consolidate for purposes of this opinion, involve a two-year-old girl, N.A.,[1] who was born in February 2016. The child's birth mother is appellant K.M. The child's birth father, R.A., has not appealed the rulings of the trial court, including the termination of his own parental rights.

I.

N.A. was born prematurely at thirty weeks, when her mother's placenta erupted. The child received no prenatal care. She weighed only three pounds and six ounces at birth and was placed on a respirator at the hospital. She was diagnosed with abnormally high bilirubin in her blood, and did not open her eyes for a period

---

[1] Pursuant to Rule 1:38-3(d)(12), we use initials to protect the privacy of the child and the other parties.

of time.  The mother tested positive for marijuana and cocaine at birth, and cocaine was also found in the baby's system.  The mother admitted that she had used drugs through the last trimester of the pregnancy, including the day before the child was born.

The mother had no stable housing or employment.  She has a long history of drug abuse and related incarcerations and homelessness.

Notably, the mother did not visit the baby for the month when she was in the Neonatal Intensive Care Unit, even though the Division of Child Protection and Permanency contends it provided her with bus tickets to enable such visitation.  The mother claimed that she planned to take care of the baby at a friend's house.  However, the Division's assigned caseworker did not find a bassinet there, and the person living at the address provided by the mother denied knowing the mother.

Once the newborn, N.A., was released from the hospital, the Division soon conducted an emergency removal and placed her with a resource parent.  The resource parent has been the child's ongoing caretaker since that time.

N.A. has special needs due to delays in her gross motor skills and communication skills.  N.A.'s resource parent is aware of her needs and has cooperated with the therapy prescribed by the Division to aid the child's development.

Appellant and R.A. previously had their parental rights terminated in July 2016 with respect to their son, J.M. The son had also tested positive for drugs at birth in April 2014. J.M. has since been placed permanently with a paternal uncle. The termination of both parents' rights as to J.M. was affirmed by this court in a June 2017 unpublished opinion. N.J. Div. of Child Prot. & Permanency v. K.M., No. A-5108-15 (App. Div. June 7, 2017) (slip op. at 6).

The parents each have longstanding drug abuse issues. The mother previously left the "Mommy and Me" caregiving program after only three weeks with J.M. She has frequently moved and been unable to maintain employment or steady housing. Most importantly, she has never been able to overcome her drug dependency.

Throughout N.A.'s life, the mother has been recalcitrant and difficult to locate. She continued to test positive for drugs on multiple occasions after N.A.'s birth. Additionally, the mother's visits with N.A. were infrequent and highly sporadic, except for times when she was incarcerated. The mother failed to submit to psychological and bonding evaluations until she was incarcerated. She repeatedly failed to comply with substance abuse evaluations during the litigation. In sum, the mother has failed to take advantage of nearly all of the services offered to her by the Division.

Given these failures, the Division charged the mother with child abuse and neglect under N.J.S.A. 9:6-8.21(c)(4)(b). A fact finding hearing was held on September 22, 2016.

Judge Lois Lipton conducted the fact-finding hearing. She found the sole testifying witness, Division caseworker Vivian Acosta, to be credible. The judge expressly declined to rely on a finding that the baby had suffered from drug withdrawal symptoms. Nevertheless, she found that, although drug use can no longer be a per se basis to find abuse and neglect, see N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 23 (2013), the mother's behavior and indifference to the child's needs were sufficient additional factors, beyond the baby's positive drug screen, to support a finding of abuse and neglect.

On appeal in the abuse or neglect case (A-3133-16), the mother contends that the trial court unfairly penalized her for her poverty and homelessness. She asserts there is no sufficient corroborating evidence of the child suffering harm or withdrawal, emphasizing that A.L. holds that drugs in a newborn's system cannot be the sole basis for finding abuse or neglect. She argues there was no proof of actual or likely harm to the child here, and that, in essence, the court improperly shifted the burden of persuasion

from the Division to her. She also complains that the Division did not do enough to try to reunify the family.

Our review of Judge Lipton's findings is guided by well-established standards. As the Supreme Court has underscored, the purpose of Title 9 is "to protect children 'who have had serious injury inflicted upon them' and make sure they are 'immediately safeguarded from further injury and possible death.'" A.L., 213 N.J. at 18 (quoting N.J.S.A. 9:6-8.8(a)). "The law's 'paramount concern' is the 'safety of the children,' and 'not the culpability of parental conduct[.]'" Ibid. (internal citations omitted). "The focus in abuse and neglect matters . . . is on promptly protecting a child who has suffered harm or faces imminent danger." Ibid. (citing N.J.S.A. 9:6-8.21(c)(4)).

A court's finding of abuse or neglect must be based on a preponderance of the evidence when the proof is considered in its totality. N.J.S.A. 9:6-8.46(b)(1). "[I]n child abuse and neglect cases the elements of proof are synergistically related. Each proven act of neglect has some effect on the child. One act may be 'substantial' or the sum of many acts may be 'substantial.'" N.J. Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010) (internal citations omitted). The Title 9 proof standard is less stringent than in guardianship cases for the termination of parental rights, which must instead be proven

by clear and convincing evidence. See N.J.S.A. 30:4C-15.1(a); N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 554 (2014) (citation omitted) (recognizing the "clear and convincing" evidence standard required for a termination case).

Abuse and neglect, as defined by N.J.S.A. 9:6-8.21(c), occurs when:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The statute does not require that the child experience actual harm. N.J.S.A. 9:6-8.21(c)(4)(b); see also N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 449 (2012) (explaining that the Division need not wait until a child experiences an actual injury) (citing In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (stating that the court does not need to "wait to act until a child is actually irreparably impaired by parental inattention or neglect")). Instead, a child can be abused and neglected if his or her physical, mental, or emotional condition has been

"impaired or is in imminent danger of becoming impaired . . . ." N.J.S.A. 9:6-8.21(c)(4). The Title 9 analysis is fact-sensitive, and the court must consider the totality of the circumstances. See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). The primary focus of the statute is to preserve the safety of the child. N.J.S.A. 9:6-8.8(a).

The Supreme Court has instructed that the abuse and neglect standard under Title 9 is satisfied when the Division demonstrates that a parent has failed to exercise a minimum degree of care. See G.S. v. Dep't of Human Servs., 157 N.J. 161, 181 (1999) (citations omitted). A "minimum degree of care" encompasses conduct that was "grossly or wantonly negligent, but not necessarily intentional." Id. at 178. Wanton negligence equates to conduct that was done with the knowledge that injury is likely to result. Ibid. A parent's action or inaction can rise to the level of wanton negligence even if he or she did not intend to cause injury. See id. at 179. The Court has recognized in this regard that a parent should be liable for the foreseeable consequences of his or her choices. See ibid.

A parent's long-term drug abuse can satisfy the statutory test for abuse or neglect. To be sure, "'[N]ot all instances of drug ingestion by a parent will substantiate a finding of abuse or neglect.'" A.L., 213 N.J. at 24 (quoting N.J. Div. of Youth &

Family Servs. v. V.T., 423 N.J. Super. 320, 332 (App. Div. 2011)). However, ongoing irresponsible behavior by a drug-addicted parent, and his or her failure to take advantage of services offered by the Division that might help him or her overcome his or her deficits, can suffice to meet the Division's burden of proof. See N.J. Div. of Youth & Family Servs. v. L.M., 430 N.J. Super. 428, 444 (App. Div. 2013) (affirming finding of harm under first prong of best interest standard based on the mother's "continued drug use, lack of appropriate housing, and failure to attend treatment").

Our review of the trial court's findings is limited. We must defer to the factual findings of the Family Part if they are sustained by "adequate, substantial, and credible evidence" in the record. N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (citation omitted). In this regard, we afford great deference to the trial judge's credibility findings, as the judge had the first-hand opportunity to observe the testimony when it was presented. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citations omitted). Thus, we specifically defer to Judge Lipton's finding that caseworker Acosta, the sole testifying witness at the hearing, was credible.

By contrast, "'where the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' the traditional scope of review is expanded." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citations omitted). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (citations omitted).

Applying these standards, we agree with the Division and the Law Guardian there is ample evidence in the record to support Judge Lipton's findings of abuse or neglect by the preponderance standard, and that the findings comport with the applicable law under Title 9. The facts here are stronger than those involved in A.L., in light of this mother's behavior in not endeavoring diligently to develop a relationship with the child, her failure to have a realistic plan in place for the baby's care after her birth and release from the hospital, and her uncooperative and irresponsible behavior. The child was placed in imminent danger of harm due to the mother's wanton failure to provide a "minimum degree of care . . . ." See N.J.S.A. 9:6-8.21(c)(4); G.S., 157 N.J. at 181. We reject defendant's arguments that the trial court misapplied the law, or that it ruled against defendant merely

because of her poverty or homelessness. The record provides a solid basis for the court's determination under Title 9, and we decline to set it aside.

## III.

The subsequent guardianship trial was presided over by Judge Lourdes I. Santiago. The judge, who issued a twenty-six-page written opinion on September 19, 2017, found that the four prongs necessary for termination of a parent's rights were met by clear and convincing evidence as to both the mother and the father.

Judge Santiago began by noting the history of domestic violence in the family, including incidents between the mother's own mother and the mother's older daughter and between the grandmother and the grandmother's husband. The judge cited to the parents' long history of substance abuse and incarceration. The judge stated that custody of an older child of the mother had been granted to a paternal aunt in Alabama. She also found significant the termination of the parents' rights as to J.M., which preceded this case as to his sibling N.A.

Both parents failed to attend substance abuse evaluations. When they did, they usually had positive urine screens. There were also intermittent periods of incarceration of both parents for various offenses. The parents missed numerous scheduled visitations with N.A.

11

Neither the mother nor the father attended the guardianship trial. Neither the mother nor the father presented any testimony in his or her behalf. Apparently, the mother's plan for the child was to attempt to reconcile with the father and reunify the family. Dr. Frank Dyer, the Division's expert, found that her plan was unrealistic. He opined that the best interests of the child were in remaining with her resource parent, who is the only parental figure N.A. has known consistently. The resource parent reportedly wishes to adopt N.A.

Dr. Dyer also conducted bonding evaluations. His evaluation with the mother, conducted at a jail, showed the child recognized her. The mother interacted with N.A. in an appropriate manner. Even so, Dr. Dyer observed the child exhibited stronger ties in the bonding session with the resource parent. Dr. Dyer opined the mother posed a "high risk of relapse" due to her drug usage. He further opined that N.A. would be "at extreme risk of harm" if she were turned over to the mother's care.

The Division ruled out any other relatives suggested by the mother, including the paternal uncle caring for N.A.'s brother, who does not have the space to take on another child. Likewise, the mother's sister, who is a foster parent, does not have suitable space.

On appeal in the guardianship matter (A-0635-17), the mother raises the following issues: (1) the trial was unfairly moved up eight weeks; (2) her trial attorney was ineffective in failing to file a motion to have the court order the Division to provide her with services; (3) the judge improperly relied on a complex hearsay opinion within the Division's records that the baby was exhibiting symptoms of drug withdrawal; (4) the Division did not provide adequate services; and (5) the Division improperly denied the mother's request to place N.A. with the mother's sister and did not explore the possibility of Kinship Legal Guardianship ("KLG").

When seeking the termination of a parent's rights under N.J.S.A. 30:4C-15.1(a), the Division has the burden of establishing, by clear and convincing proof, N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210, 240 (App. Div. 2017) (citation omitted), the following criteria:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a); see also N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-11 (1986) (reciting the four controlling standards later codified in Title 30).]

As with appeals from Title 9 abuse or neglect decisions, our scope of review of appeals from orders terminating parental rights under Title 30 is similarly constrained. In such termination appeals, the trial court's findings generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." R.G., 217 N.J. at 552 (citation omitted). A decision in this context should only be reversed or altered on appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004) (citation omitted).

We must give substantial deference to the trial judge's opportunity to have observed the witnesses first hand and to evaluate their credibility. R.G., 217 N.J. at 552. We also must recognize the considerable expertise of the Family Part, which adjudicates many cases brought by the Division under Title 9 and

Title 30 involving the alleged abuse or neglect of children. <u>See</u> <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 N.J. 420, 448 (2012) (citation omitted).

Having considered the record from the guardianship trial in light of these standards, we reject the mother's arguments and affirm the final judgment of termination. We do so substantially for the reasons expressed by Judge Santiago in her comprehensive written decision. We only add a few comments.

The procedural decision to move up the guardianship trial to an earlier date than was initially contemplated was well within the trial court's wide discretion over trial scheduling. <u>See,</u> <u>e.g.</u>, <u>State v. Miller</u>, 216 N.J. 40, 47 (2013). Moreover, the scheduling change had no discernible effect on the outcome of the guardianship trial, because the mother persisted in being non-compliant with services throughout the entire litigation. It is sheer speculation to believe that the outcome of the trial would have produced a different result had it been conducted a few months later. The mother fails to show she was prejudiced by the adjournment. In addition, the expeditious disposition of the case is consistent with N.A.'s important interest in attaining permanency. <u>See</u> <u>In re Guardianship of K.H.O.</u>, 161 N.J. 337, 357 (1999) (recognizing New Jersey's strong public policy favoring permanency).

A-3133-16T2

Appellant's claim under <u>N.J. Div. of Youth & Family Servs. v. B.R.</u>, 192 N.J. 301, 308-09 (2007), alleging that her trial attorney was ineffective and thus the judgment must be set aside, is patently without merit. The thrust of this claim is that trial counsel should have advocated that the mother receive more services. But the mother was already granted and offered an abundance of services approved by the court and the Division. Among other things, those services included drug abuse evaluations, drug testing, visitation, an exploration of housing assistance and a re-integration program, and bus passes or other needed transportation. Unfortunately, as Judge Santiago aptly noted, the mother did little to take advantage of the services that were provided or offered to her.

Appellant next argues that the trial court improperly admitted hearsay evidence presented by the Division. This argument provides no basis for reversal. To be sure, the Division's proofs did include certain hearsay opinions, embedded in the investigation records, concerning N.A.'s medical condition and a perceived manifestation of post-birth withdrawal symptoms. Arguably, those portions of the record, to the extent they involved complex and disputed expert opinions by a nurse or a physician, should not have been admitted over defense counsel's objection. See N.J.R.E. 808; <u>N.B.</u>, 452 N.J. Super. at 526 (citations omitted);

16

N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 501-02 (App. Div. 2016).

Even so, we conclude this evidential point is of no consequence to the ultimate outcome of this appeal. Regardless of whether there was or was not competent proof that N.A. was harmed by her mother's prenatal drug abuse and whether N.A. actually manifested withdrawal symptoms, a "mother's inability to provide any nurturing or care for her daughter for [a] prolonged period is a harm to [the child] that is cognizable under the best interests standard." K.H.O., 161 N.J. at 356 (citing A.W., 103 N.J. at 604-11); see In re Guardianship of D.M.H., 161 N.J. at 380-81 (noting that a parent's withholding of parental solicitude, nurture, and care for an extended time is cognizable harm). This potential for harm resulting from the mother's inability to nurture for prolonged periods of time, was aptly recognized by Judge Santiago in her written opinion.

The proofs of the risks of harm to the child in this case, independent of N.A.'s alleged withdrawal symptoms, were formidable. Hence, the claimed violation of the hearsay rules is of no moment in this case. See R. 2:10-2 (instructing that trial court decisions shall not be reversed on appeal unless appellant demonstrates error that is "clearly capable of producing an unjust result"); see also State v. Macon, 57 N.J. 325, 333 (1971).

17                                                    A-3133-16T2

We reject appellant's next contention that the Division did not make "reasonable efforts" to provide her with services before terminating her parental rights. N.J.S.A. 30:4C-15.1(a)(3). As we have already noted, and as is well delineated in Judge Santiago's opinion, the Division repeatedly provided or offered services to the mother in this case. The failure of those services to result in the reunification of N.A. lies with appellant herself, whose record of missed appointments and overall lack of cooperation was abysmal.

Nor is there any merit to appellant's claim that the Division and the court failed to explore viable options to termination. The Division did not act precipitously in ruling out other relatives as potential caretakers. The Division reasonably determined that the mother's sister R.M., and C.B., the paternal uncle who assumed custody of N.A.'s brother, were not feasible options. In addition, the Division reasonably ruled out the mother's adult daughter, M.H., after discovering that M.H. was in a boarding home, and did not have her own place to live, and was unemployed.

Appellant's contention that the court should have explored and approved KLG also fails. The law is clear that KLG is not an option unless there is no one willing to adopt the child. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 222-24

(2010) (discussing KLG at length); In re Adoption of Child by Nathan S., 396 N.J. Super. 378, 387 (Ch. Div. 2006) (discussing how KLG is not an option unless adoption is not feasible). Here, the record reflects the resource parent, who has raised N.A. nearly from birth, is interested in adopting her.

In sum, we agree with the trial court, the Division, and the Law Guardian that the evidence clearly and convincingly supports all four prongs of the termination criteria. N.J.S.A. 30:4C-15.1(a). As the unrebutted expert testimony of Dr. Dyer establishes, it is in the best interests of this child, despite her tender years, to be on the road to adoption by her resource parent, who was found capable of managing her special needs. The court's termination of the parental rights of this drug-addicted mother, who showed no realistic signs of becoming a fit caretaker, and who spurned most of the services offered to her, was consistent with the evidence and with the governing law.

All other points raised by appellant in these consolidated appeals, to the extent we have not already addressed them, lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION